## COMBS *v.* GILLEY ET AL.

[No. 27,578.   Filed October 7, 1941.   Rehearing denied
November 5, 1941.]

F. A. *Seal* and *Alvin Seal,* both of Washington, for appellant.

T. P. *Meade,* of Washington, for appellees.

ROLL, J.—Appellant by her complaint below sought by a writ of *habeas corpus,* the possession and control of Betty Jo Gilley, a minor, six years old and the child of appellant.

The pleadings in this case consisted of a complaint, a return thereto and a general denial to the return.

The complaint in substance alleges that Mayme Combs, appellant herein, is the mother of Betty Jo Gilley, a minor child, who was born on the 11th day of November, 1934, and to whose custody and possession she is rightfully entitled.

That on the 13th day of February, 1937, in cause No. 19248, entitled John Gilley v. Mayme Gilley, this court awarded the care and custody of the said Betty Jo Gilley to the said John Gilley. That John Gilley died on March 30, 1941.

That the defendants Owen Gilley and Katie Gilley now illegally and without cause restrain the person of the said Betty Jo Gilley in their home in Washington, Daviess County, Indiana. That since the death of the said John Gilley, appellant demanded the possession of said child, which was refused. That the cause of the restraint by the defendants, is that they are the paternal grandparents of said child, and have the right to her care and custody.

Appellees filed a return to said complaint in which they admit that they have possession of said Betty Jo Gilley. It is alleged that appellant and John Gilley, son of these defendants, were married on March 26, 1934, and that Betty Jo Gilley was the only child born of said marriage. That afterwards the said John Gilley brought suit for divorce against appellant on the grounds of cruel and inhuman treatment, and therein asked for the custody of said child. The court granted a divorce to John Gilley and awarded him the care and custody of said minor child.

The answer further alleged that John Gilley and Mayme Gilley lived with these defendants at the time of the birth of Betty Jo, and that Betty Jo has lived with these defendants continuously since her birth. The answer further showed that the defendants had become

attached to said child, that they had a comfortable home and were able and willing to care for said child, etc.

That after John Gilley was divorced from appellant she married James Combs, and to this marriage a child was born, and that they now live in the city of Columbus, Indiana.

Appellant filed a general denial to appellees' return. Evidence was heard and judgment entered by the court, denying appellant's petition and awarded the care and custody of Betty Jo Gilley to these appellees.

Appellant filed her motion for a new trial, which was overruled, which action of the court she assigns as error on this appeal.

The evidence introduced follows rather closely the allegations of the pleadings. The appellant introduced evidence to the effect that she and John Gilley were married in 1934, and lived together until about 1937, and that Betty Jo was born to this union on November 11, 1934. That in 1937, John Gilley filed suit for divorce, that she did not appear personally at the trial but appeared by her attorney. After the marriage appellant and John continued to live in the Gilley home and continued to live in that home with the exception of a month or so until appellant left and separated from her husband. John and Betty Jo continued to live in the Gilley home until John died in 1941, and Betty Jo has continued to live in the Gilley home ever since. The record discloses that after the appellant separated from her husband she continued to live in the City of Washington, Daviess County, Indiana, and visited her daughter Betty Jo weekly, and she took Betty Jo with her almost every Sunday during the time she lived in Washington. Appellant was employed at the Reliance Manufacturing Company. That

soon after the divorce was granted to John Gilley appellant married James Combs, that there has been one child born to this marriage, that James Combs and appellant herein are now residents of Columbus, Indiana, and have been residents of Columbus for some time. That she is employed at Columbus and during the daytime she employs a girl to come to the home and take care of her two minor children.

The answer filed by appellees herein alleged that Betty Jo Gilley was the only child born to the marriage of John and Mayme Gilley. The record discloses and we find this is the testimony of appellant herself that she and John separated on the 1st of March, 1936, and that a second child named Barbara Kay Gilley was born on February 4, 1937. The divorce case was tried on February 13, 1937, and that she was married to James Combs, March 6, 1937. Appellant also testified that Barbara Kay Gilley has been in the custody of appellant ever since her birth as above set out. The record also discloses that appellant herein has, on different occasions, made clothing for Betty Jo and bought various gifts which she thought suitable for a child her age and gave them to her when she would visit her in the Gilley home. No objection seems to have been made to appellant visiting Betty Jo on the part of appellees herein, or that appellees objected to appellant taking the child and keeping her on Saturdays and Sundays. Apparently appellant returned the child to the Gilley home before nightfall.

Appellant also introduced evidence as to the kind of home she has in Columbus, Indiana, and witnesses testified that they were acquainted with appellant and she had conducted herself in a lady-like manner and that in their judgment she was a fit and suitable person in every way to have the care of her child. On behalf

of the appellees, the evidence was that after John and Mayme were married they lived in the Gilley home and continued to live there most of the time until the divorce in 1937. That John and Mayme never got along very well together, that Betty Jo was born in their home and has lived in their home continuously since her birth except a short time when John and Mayme lived in a separate home; that John brought suit for divorce against Mayme and a decree of divorce was granted to him on February 13, 1937. That after the divorce was granted Betty Jo lived in their home and they have cared for her until the present time. Before Mayme moved to Columbus, she would visit Betty Jo usually twice a week on Saturday and Sunday, not often however through the week. After she moved to Columbus she came to visit the child two or three times a month. There was some testimony offered on behalf of the appellees to the effect that appellant did not intend to permit Betty Jo to interfere with her having a good time. Appellees also introduced evidence to the effect that Betty Jo had been a regular attendant to Sunday school and is now attending the common school in Washintgon, that she is well cared for in every way. That she is kept well-dressed and clean, that the home of the Gilleys is comfortable and has sufficient room to accommodate all members of the family.

Evidence was also introduced as to the reputation of the Gilleys and their home life. Appellees introduced in evidence the complaint for a divorce filed by John Gilley against Mayme Gilley and also the judgment and decree of the court entered in said cause. The decree of divorce was in favor of John Gilley and he was awarded the care and custody of Betty Jo. The complaint therein alleged that John Gilley was a fit person

to have the care and custody of the said Betty Jo and that the defendant Mayme Gilley was not a fit person to have the care and custody of said child. It was so adjudged upon the evidence as above set forth, and the court denied appellant's petition and awarded the care and custody of said minor child to the appellees herein.

From appellant's brief it seems that she takes the position that under the law the father, if living, and a suitable person shall have the custody of his minor children, but if the father be dead or an unsuitable person, then the mother succeeds to the right of the custody if she be a suitable person, and in support of the above proposition cites § 8-109, Burns' 1933, § 3427, Baldwin's 1934, and *Orr* v. *State* (1919), 70 Ind. App. 242, 255, 123 N. E. 470. The above proposition is generally true:

"Both under the common law and the statutes of this State, the natural parents are entitled to the custody of their minor children, except when they are unsuitable persons to be entrusted with their care, control and education." *Gilmore* v. *Kiston* (1905), 165 Ind. 402, 406, 74 N. E. 1083.

" 'The universal law of all nations gives the possession and control of children to the male parent, if begotten and born of wedded parents. . . .' " *McGlennan* v. *Margowski* (1883), 90 Ind. 150, 155.

"In this state the father, if a suitable person, and, if not, then the mother, if a suitable person, has the preference to the custody of the person, control and education of their legitimate minor children, but either or both may be deprived of such custody in some appropriate proceeding wherein it appears that the welfare of such children is paramount to the claims of the parent." *McDonald* v. *Short, Supt.* (1921), 190 Ind. 338, 341, 130 N. E. 536.

In the case of *Jones* v. *Darnall* (1885), 103 Ind. 569, 573, 2 N. E. 229, this court quoted with approval the following excerpt from the case of *United States* v. *Green*, 3 Mason 483:

" 'As to the question of the right of the father to have the custody of his infant child, in a general sense it is true. But this is not on account of any absolute right of the father, but for the benefit of the infant, the law presuming it to be for its interest to be under the nurture and care of its natural protector, both for maintenance and education. When, therefore, the court is asked to lend its aid to put the infant into the custody of the father, and to withdraw him from other persons, it will look into all the circumstances, and ascertain whether it will be for the real, permanent interests of the infant; and if the infant be of sufficient discretion, it will also consult its personal wishes. . . . It is an entire mistake to suppose the court is at all events bound to deliver over the infant to his father, or that the latter has an absolute vested right in the custody.' "

In *Stone* v. *Stone* (1902), 158 Ind. 628, 632, 64 N. E. 86, the court said with reference to the duty of the trial court toward minor children of divorced parents as follows:

"Since the organization of our State government it has been the established policy of the law to regard the minor children of divorced parents as wards of the court in the same general way that minor children of deceased parents are regarded. The nurture and proper training of such children are subjects of vital interest to the State, as well as to the children themselves, and when the family has thus been broken up, and the children taken to other homes, and exposed to the mutual animosities and jealousies of their parents, and their happiness and usefulness as citizens endangered, the court granting the divorce must be deemed to have full and continuing jurisdiction, during the minority of such children, to make from time

to time such orders and modifications thereof, with respect to their care, custody, and control, as are deemed expedient; and interests of society and welfare of the children, in all such inquiries, being the paramount and controlling consideration. Bishop Mar. & Div., §§ 1186, 1187, 1188; *Neil* v. *Neil*, 38 Ohio St. 558; *Dubois* v. *Johnson*, 96 Ind. 6; *Leibold* v. *Leibold, ante*, 60."

This court had before it for consideration in the case of *Duckworth* v. *Duckworth* (1932), 203 Ind. 276, 179 N. E. 773, a very similar situation as we have at bar. In that action the father of a minor son brought a *habeas corpus* proceedings against his own brother and his wife to recover the possession of his minor son. It appeared in that case that Richard Duckworth was, at the time of the commencement of action, living with his second wife and two children in the city of Indianapolis; that his first marriage was terminated by a divorce and the mother of the children was given the custody of the minor child. The mother worked in Spencer, Indiana, and Otis, her minor child, sometimes visited his father. The mother became ill and was no longer able to care for Otis and he was taken to the home of his uncle, William Duckworth, where he thereafter made his home. The mother soon thereafter died and Otis continued to live with his Uncle William and his wife, Lois. The father, Richard Duckworth, sought to obtain the custody of his son, Otis, from William and Lois Duckworth. There was a trial and the court denied the father's petition. The court in that case reviewed many authorities and rendered an exhaustive opinion dealing with the question that is presented in the case at bar.

As was said in the Duckworth case, *supra*, p. 287:

"The trial court had before it the question of this father's reformation and the paramount ques-

tion of the welfare of the child. The determination of both questions rested upon the sound judicial discretion of the trial court rather than upon hard and fast rules of law."

Such cases present hard and perplexing questions to the trial court. But it had greater facilities for weighing the evidence, and for reaching a safe conclusion than we can have with the record only before us. It saw the witnesses and heard them testify. It could observe their manner and demeanor while in the court room, and therefore was better able to determine the best interest of the minor child. In a review of the evidence on appeal in cases of this character, we are limited to the question of abuse of judicial discretion.

After a careful review of all the evidence as shown by the record, we cannot say that the court abused its discretion and therefore the judgment must be affirmed.

Judgment affirmed.

NOTE.—Reported in 36 N. E. (2d) 776.