## GILCHRIST *v.* GILCHRIST

[No. 28,311. Filed November 14, 1947.]

*Gavit & Richardson,* of Gary, for appellant.

*Hodges, Ridgely and Davis,* of Gary, for appellee.

Young, J.—This is an appeal from a judgment in a *habeas corpus* proceeding brought by appellee, the natural mother, against appellant, the stepmother, to secure the custody and possession of George Arthur Gilchrist. There was a judgment awarding the boy to his natural mother.

Eileen Gilchrist and James Gilchrist were the parents of two children, George and Eileen. On October 25, 1938, a divorce was granted the wife and the daughter Eileen who was then four months old was awarded to the mother, and the son George who was then 22 months

old was awarded to the father. At the time of the judgment in the *habeas corpus* proceeding George was 10 years old.

After the divorce appellee and the little daughter Eileen lived in Gary for about three years. Appellee's father lived with them and helped support the home. During this period appellee visited the boy George frequently. She took the little daughter in her buggy to see George and took them both out for walks. At the end of about three years the work of appellee's father took him to Cairo, Illinois. Appellee and her daughter moved to Cairo with him and they lived there from November, 1941, until June, 1942. During the period of her residence in Cairo, Illinois, she did not see her son. In June 1942, she visited friends in Chicago for about three weeks and then moved to West Lafayette, where she has lived continuously since. On her way from Chicago to Lafayette she stopped in Gary to see her son. While living in West Lafayette she made automobile trips to Gary and saw her son seven or eight times a year. The son was never brought to Lafayette to visit her and she never had him with her except for about a week during the summer prior to the trial of this action when he was with her and his sister at her home in West Lafayette and at Lake Shafer. Neither the father nor the paternal grandmother ever came to Lafayette to see the daughter Eileen and there is no evidence that either of them ever requested that she be permitted to visit them in Gary.

After the divorce the father took George to the home of his mother in Gary where they lived until the father's marriage in 1941 to appellant. Thereafter the father and appellant had their own home and George lived with them and in due time there was another son, Perry, by George's father and appellant.

George's father died on June 30, 1946. After the death of his father he continued to live with his stepmother and half brother. His paternal grandmother went to live with them. They lived in an eight room, two-story house in a good neighborhood in Gary. Three rooms upon the second floor were rented. George could have had a separate bedroom but at his request his bed was moved into his stepmother's room after his father's death. The stepmother had an income from rent of the upstairs rooms and from social security payments which amounted to $97 per month. She owned the house in which they lived and had cash and government bonds aggregating about $2,000. She was a trained nurse and worked occasionally. The grandmother also had an income from a house she owned and rented. George went to a good school and was able to come home for lunch. He engaged in school, boy scout, church and neighborhood activities and had made many friends.

Appellee, since moving to West Lafayette in 1942, has had and still has an apartment consisting of three large rooms and a bathroom in an apartment building in a good neighborhood very close to Purdue University campus. Her father is a plastering superintendent whose work takes him over the state and he is home only on weekends. His earnings are approximately $100 per week. He lives with appellee and helps her in maintaining the home. The plan was that if appellee secured the custody of George the little daughter would sleep in the bedroom with appellee and the boy would sleep in the living room and her father would sleep in an alcove or bay window off the kitchen. There was testimony that efforts had been made by appellee and her father to secure a larger apartment, without success, and that these efforts would continue and that a larger apartment

would be obtained as soon as housing conditions made it possible.

Since the time she moved to West Lafayette appellee has been employed continuously as a saleswoman in the same Lafayette department store and her earnings amount to approximately $25 a week. She works from 9:15 A.M. to 5:15 P.M. six days a week. Good schools are near by and a nursery school is available to care for the children after school and before the mother returns from work. It appeared that George would carry his lunch to school and after school could go to the nursery school or if he preferred return home where a neighbor would be watchful for his welfare. On Saturdays appellee's father would be able usually to see to the children.

There is no claim on either side that the stepmother, the grandmother or the natural mother were not fit persons to have the custody of the boy. Appellant's argument was predicated very largely upon the superior accommodations and material advantages that the boy would have if he lived with his stepmother, the handicap which the mother's employment placed upon her ability to rear her children and the theory that transplanting him from one environment to another would be bad for him.

At common law parents had a natural right to the custody of their children, *Brown* v. *Beachler* (1946), 224 Ind. 477, 68 N. E. (2d) 915, 916, and cases cited; *Duckworth* v. *Duckworth* (1932), 203 Ind. 276, 282, 179 N. E. 773; and we have statutes declaratory of the common law in this respect. §§ 8-109, 8-110, Burns' 1933.

Also under the decisions and opinions of our courts ordinarily a parent who is of good character and

reasonably able to provide for his or her child is entitled to its custody as against others. *Duckworth* v. *Duckworth, supra; Brown* v. *Beachler, supra; McDonald* v. *Short, Supt.* (1921), 190 Ind. 338, 341, 342, 130 N. E. 536; *Combs* v. *Gilley* (1941), 219 Ind. 139, 145, 36 N. E. (2d) 776. The rights of parents, however, are not absolute. They must yield to the welfare of the child. Its welfare and best interest are the paramount and controlling considerations in all disputes over the custody of a child. *Brown* v. *Beachler, supra; Duckworth* v. *Duckworth, supra; Weber* v. *Redding* (1928), 200 Ind. 448, 455, 163 N. E. 269. The disposition of children is not controlled by hard and fast rules of law but by the exercise of the sound judicial discretion of the court confronted with the problem. Review by an appellate court of such disposition is limited to the question of abuse of judicial discretion. *Brown* v. *Beachler, supra; Duckworth* v. *Duckworth, supra; Combs* v. *Gilley, supra; Weber* v. *Redding, supra.*

A careful and instructive review of the Indiana law and cases governing the disposition of children will be found in the opinion of Martin, J. in *Duckworth* v. *Duckworth, supra.*

The disposition of children presents a delicate and perplexing task which has taxed the wisdom of judges since the day of Solomon. The trial court is better able to arrive at a sound and safe conclusion than can a court of review which has only the cold printed or typed record before it. It is true that the facts in this case are not in great dispute but even where evidentiary facts are admitted different inferences and conclusions may be drawn therefrom, and conclusions and judgments may hang upon intangibles and impressions not cognizable to a court of review. The trial court in this case saw the mother and

the stepmother and was in better position to weigh the evidence and the inferences therefrom and determine the best interest of the child, and having done so, it is not for us to substitute our judgment for the judgment of the trial court's unless it appear from uncontradicted and undisputed evidence and the only inferences therefrom that the trial court violated its discretion and reached an untenable position. To reverse this case would require us to hold that the trial judge violated sound judicial discretion in reaching his conclusion. This we are unwilling to do.

Appellant, in her brief herein, has called our attention to § 2-3229, Burns' 1946 Replacement, which says that this court shall on appeal in non jury cases, weigh the evidence on trial, and, if it appears from all the evidence that the judgment is not fairly supported by or is against the weight of the evidence, shall award judgment accordingly. This court has held repeatedly that the above statute does not require this court on appeal to weigh conflicting evidence. *Hitt* v. *Carr* (1928), 201 Ind. 17, 26, and cases cited, 162 N. E. 409. Appellant admits that this is the law but claims that the evidence in this case is without conflict and this is substantially true, but it does not follow, and it is not true, that conflicting inferences may not be drawn from the uncontradicted evidence. Therefore, the statute referred to does not apply in this case.

Two other points are urged by appellant as grounds for reversal. The first is that between the time of the trial and the time that a motion for a new trial was ruled upon the boy was in the custody of his mother and appellant contends that he knew, as no one else could, the comparative advantages of life with each. He had lived with each. For this reason appellant in connection with its motion for a new trial

asked the trial court under Rule 1-8 of this court to re-open the case for further evidence and let the boy testify. The court denied this request. This was a matter for the discretion of the trial court and again we are not disposed to substitute our judgment and say that the trial court abused its discretion. It would have placed the boy in a position where he might have to testify against someone he loved. No doubt he loved his mother and no doubt he loved his stepmother and grandmother with whom he had spent his few years of life. The court may have thought that to have asked a child of such tender years to take sides would be unfair to him, or that it might forfeit the good will of one side or the other to his disadvantage in future years.

Another ground for reversal urged by appellant was the court's refusal to modify the judgment by ordering that appellant might upon proper occasions have or see the boy. Whether or not this should be done was in the sound discretion of the court. Again we say that the court saw the parties and the witnesses and could know better than we whether such an order would be to his advantage or otherwise.

We have carefully examined the evidence and considered the situation in which the trial court found itself and are unable to say that it abused its discretion.

The judgment is affirmed.

NOTE.—Reported in 75 N. E. (2d) 417.