BEVERLY J. FREEMAN *v.* GARY E. FREEMAN.

[No. 1-573A89. Filed December 27, 1973. Rehearing denied January 30, 1974. Transfer denied May 3, 1974.]

*Vernon J. Petri,* of Spencer, for appellant.

*Charles W. Edwards,* of Spencer, for appellee.

LYBROOK, J.—Plaintiff-appellant Beverly J. Freeman (Beverly) obtained a divorce from appellee-defendant Gary E. Freeman (Gary) on April 30, 1970. Custody of their two year old daughter was granted to Beverly with visitation provided for Gary, the natural father. In November 1972, after Gary had filed contempt proceedings for Beverly's alleged failure to allow visitation, Beverly filed a petition to modify the decree asking termination of Gary's visitation.

After a hearing the trial court reaffirmed the former decree and Beverly appeals, presenting the following alleged errors:

1. The refusal of the Court to permit the grandmother to testify as to statements allegedly made by the child.
2. The decision of the Court refusing to modify the visitation rights of the defendant.
3. The decision of the Court denying plaintiff's Petition for Order Permitting the Introduction of New and Additional Evidence.

The essence of Beverly's contentions is that Gary had molested the child during periods of visitation as evidenced by reddened areas in the child's vaginal region. She further based this contention upon certain movements of the child which imitated the sex act, the child's statements to her grandmother which the trial court excluded, and the results of a polygraph test of Gary which was admitted into evidence and suggested that he was not truthful in his protestations of innocence concerning his behavior with the child. Medical testimony was not conclusive as to the cause of the reddened areas on the child's body.

Beverly first contends that the trial court erred in refusing to admit testimony of the maternal grandmother repeating statements allegedly made by the child as to who had molested her.

On direct examination of the grandmother she was asked:

"Q. (by Mr. Coyne, appellant's attorney) Upon seeing this sight, what did you do next?
A. I looked at Kelly, and I asked her if someone had been

bothering her there, and she looked up at me with tears in her eyes and she said, 'Yes, my dad —'

Mr. Edwards (appellee's attorney) : Now Your Honor, I will object.

Court: Objection will be sustained. You all know what the rules of evidence are and I'm going to ask that you follow them. We only have one set of rules here and they will be applied equally in both sides of the house."

After the court sustained the objection appellant failed to make an offer to prove. The attorneys later approached the bench and the following discussion occurred between the court and the attorneys:

"Mr. Coyne: We've been cited for contempt, and we are attempting to justify or prove that it was due to circumstances leading before the action . . . (inaudible) . . . are the statements of the child made to the grandmother are the key purposes as a factor to their motivation. I would, therefore, like to introduce those statements for the purpose of showing their motivation factor, not for the truth of what was said. You've talked to the girl. She's a four year old child, and I believe as a motivating force, in this situation, the statements of the child are vital.

"Mr. Edwards: I think that you can show that she was motivated by statements of the child, but I don't think you can say what the statements of the child were. I think you're in hearsay when you do that.

"Mr. Coyne: Well, we'll leave it up to you, Your Honor.

"Court: If I open the door here, I'll open it on the other side. If she is going to tell what the child told her, then the other grandparents or whoever else you want to bring in can tell us anything that she told them. That's the danger you get into. I'm inclined to hear it if you want to put it in, but it opens the door."

The record fails to reveal that appellant's attorney ever accepted the court's offer to admit the statements of the child into the record.

Numerous reasons prevent us from adopting appellant's contentions under the first issue. The request for the grandmother to repeat the child's statements was an attempt to introduce hearsay evidence from the mouth of a four year

old child who was incompetent by statute. See IC 1971, 34-1-14-5, Ind. Ann. Stat. (Burns Code Edition).

Even if the proffered testimony was admissible, appellant did not preserve the matter for review since she failed to make an offer to prove. In *Lipner* v. *Lipner* (1971), 256 Ind. 151, 267 N.E.2d 393, the court said:

". . . However, the appellant failed to make any offer to prove which is required when an objection is sustained to a question asked on direct examination. See T.R. Rule 43(C). This requirement was also in effect prior to the present rule. See Isenhour v. Speece (1958), 238 Ind. 293, 150 N.E. 2d 749; Kavanagh v. Butorac (1966), 140 Ind. App. 139, 9 Ind. Dec. 538, 221 N.E.2d 824."

In another recent case, *Marposon* v. *State* (1972), 259 Ind. 426, 287 N.E.2d 857 our Supreme Court held:

"However, they made no offer to prove in this regard. The offer to prove is necessary to enable both the trial court and this Court to determine the admissibility and relevance of the proffered testimony. State v. Lonergan (1969), 252 Ind. 376, 248 N.E.2d 352; Van Sickle v. Kokomo Water Works Co. (1959), 239 Ind. 612, 158 N.E.2d 460."

Apparently appellant offered the child's statements as bearing on the issue of contempt, and since the court did not find appellant in contempt, no prejudicial harm resulted. Furthermore, the court offered to admit the testimony but appellant did not accept. We conclude that nothing resembling reversible error is demonstrated by appellant under the first issue.

Appellant next contends that the court's refusal to change the visitation rights of the father amounted to an abuse of judicial discretion. The record before us contains an abundance of evidence which is more than sufficient to sustain the ruling of the trial court.

Appellant did not file her petition for modification of visitation rights until the day of the hearing on the father's contempt citation against her. She particularly contended that the child sustained injuries while in the custody of her

father on the weekend of the 8th, 9th and 10th of September, 1972. Appellee denied that he had ever molested the child and introduced the evidence of five other witnesses that he was not alone with the child on the above weekend.

Appellant contends the court should have given greater weight to the results of the polygraph test which was introduced in evidence. Polygraph test results are not conclusive and are but one facet of the body of evidence to be weighed by the trial court.

In the case at bar, the parties agreed for the court to visit with the child in chambers. At the conclusion of this visit, Judge Sharp made the following statement into the record:

"... I don't like to talk to four year old children. I don't think they're competent, even the brightest ones. But nonetheless, I did succumb to the urging of the two lawyers who were then in this case, and I did have a conference with this child. That was back in the November 17th, approximately, hearing, whatever the date was in November they were here. The Court found from its' view of this child, none of these bizarre things that all of the family testified about. The Court found her a very very normal, sweet, lovely four year old child. The record should further show that when I finished what I did, I subjected her to the test of whether she feared her father. I never touched the child. I let my Court Reporter hold her. In fact, I never asked her any questions. She doesn't know me. She responds a whole lot more to a mother, like my Court Reporter. Questions were asked her concerning her whole family. She loves everybody, like every little child ought to. When she was turned loose at the door, she ran hastily to her father as a normal child would do. This probably is about the best test of credibility that I think the Court could find under the circumstances. ..."

Appellant's claim of the trial court's abuse of discretion essentially amounts to nothing more than an attack on the court's decision as being contrary to the evidence. We can not reverse a trial court unless a clear abuse of discretion is manifested. *Cox* v. *Cox* (1973),

155 Ind. App. 336, 292 N.E.2d 817. In *Cox, supra,* the court quoted with approval from *Gilchrist* v. *Gilchrist* (1947), 225 Ind. 367, 75 N.E.2d 417, as follows:

" 'The disposition of children presents a delicate and perplexing task which has taxed the wisdom of judges since the day of Solomon. The trial court is better able to arrive at a sound and safe conclusion than can a court of review which has only the cold printed or typed record before it. It is true that the facts in this case are not in great dispute but even where evidentiary facts are admitted different inferences and conclusions may be drawn therefrom, and conclusions and judgments may hang upon intangibles and impressions not cognizable to a court of review. The trial court in this case saw the mother and the step-mother and was in better position to weigh the evidence and the inferences therefrom and determine the best interest of the child, and having done so, it is not for us to substitute our judgment for the judgment of the trial court's unless it appears from uncontradicted and undisputed evidence and the only inferences therefrom that the trial court violated its discretion and reached an untenable position. To reverse this case would require us to hold that the trial judge violated sound judicial discretion in reaching his conclusion. This we are unwilling to do.' "

We find nothing in the record before us to suggest that the trial judge abused his discretion. His decision was amply supported by the evidence and we will not disturb it.

Finally, appellant contends that the court erred in denying her petition for the introduction of new and additional evidence. There is a strong presumption that the alleged evidence might have been discovered in time to be used in trial. *Cobler* v. *Prudential Life Insurance Co.* (1941), 108 Ind. App. 641, 31 N.E.2d 678; *Schick* v. *Blakesley* (1923), 80 Ind. App. 253, 134 N.E.2d 498; *Morrison* v. *Carey* (1891), 129 Ind. 277, 28 N.E. 697.

TR. 60 (B) (2) provides that:

"(B) Mistake—Excusable neglect—Newly discovered evidence—Fraud, etc. On motion and upon such terms as are just the court may relieve a party or his legal representative from a final judgment, order, default or proceeding for the following reasons:

*   *   *

"(2) any ground for a motion to correct error, including without limitation newly discovered evidence, which by due diligence could not have been discovered in time to move for a motion to correct errors under Rule 59;"

It has been held that affidavits are required under Rule 59(B) as to matters appearing outside the record, including the fact that by due diligence the error could not have been discovered in time for a motion to correct errors. Diligence to discover any newly discovered evidence as a ground for relief must be asserted in the affidavit. See, 4 Ind. Prac. Rules of Civ. Proc. 211.

Appellant filed her motion to correct errors on January 3, 1973 and followed it with her petition to permit new and additional evidence which she filed on January 11, 1973. The petition is not sworn, is not accompanied by affidavit nor does it contain any allegations indicating that in exercise of due diligence such evidence could not have been discovered in time to have been included in her motion to correct errors.

Also since appellant failed to raise this issue in the Motion to Correct Errors she has waived it on appeal. The following language from *Spivey* v. *State* (1971), 257 Ind. 257, 274 N.E.2d 227 is appropriate:

"There are other issues attempted to be advanced for the first time by the defendant in his brief that were not specifically set out in his motion to correct errors before the trial court. Trial Rule 59(G) provides in part:

'Issues which could be raised upon a motion to correct errors may be considered upon appeal only when included in the motion to correct errors filed with the trial court.'

"Thus we hold that any such issues asserted to be errors not stated with specificity in motion to correct errors are deemed waived on appeal."

Finding no error in the proceedings, the judgment of the trial court is affirmed.

Robertson, P.J. and Lowdermilk, J., concur.

NOTE.—Reported at 304 N.E.2d 865.