Betty TURPEN Appellant
(Defendant Below),

v.

Robert TURPEN, and Barbara Turpen Appellees (Plaintiffs Below).

No. 83A01–8809–CV–00289.

Court of Appeals of Indiana,
First District.

May 2, 1989.

Joseph R. Schroeder, Bennett, Schroeder & Wieck, Marshall, Ill., for appellant.

Larry C. Thomas, Clinton, for appellees.

ROBERTSON, Judge.

Betty Turpen, the natural mother of Jon David Turpen, appeals a ruling of the trial court on a petition for custody and guardianship of the estate, establishing custody of her minor son with the child's paternal grandparents.

We affirm.

The record shows that Betty married David Turpen on April 30, 1982. Their son, Jon, was born on November 5, 1982. When Betty and David divorced in May, 1985, Betty agreed that David would have custody of Jon upon his return from service in the air force. David acquired physical custody of Jon in September, 1985 and moved in with his parents for approximately eight months until he purchased a home of his own about a block away from his parents. Jon lived with David until David's death on October 23, 1987. David's parents, the appellees, assumed care and custody of Jon thereafter and throughout this litigation.

Betty's argument in this appeal focuses primarily upon the proper standard to be applied by the trial court when a custody dispute involves a natural parent and third parties. She also argues the trial court's decision is against the weight of the evidence.[1] Although several of the Indiana Supreme Court's decisions have elaborated upon the test to be employed by the trial court when third parties seek custody of a child while a natural parent is still alive, none of these opinions are of recent vintage. Nonetheless, when the proper dispo-

sition of the question on appeal involves a dispute over the appropriate standard before the trial court and its application, we must rely upon these decisions for guidance in resolving the appeal.

The modified "best interests" test applied in *Combs v. Gilley* (1941), 219 Ind. 139, 36 N.E.2d 776; *Gilchrist v. Gilchrist* (1947), 225 Ind. 367, 75 N.E.2d 417; *Glass v. Bailey* (1954), 233 Ind. 266, 118 N.E.2d 800 and numerous court of appeals decisions such as *Hendrickson v. Binkley* (1974), 161 Ind.App. 388, 316 N.E.2d 376, *trans. denied, cert. denied,* 423 U.S. 868, 96 S.Ct. 131, 46 L.Ed.2d 98, emanates from the seminal case of *Duckworth v. Duckworth* (1931), 203 Ind. 276, 179 N.E. 773. In *Duckworth,* the court elucidated that of the three interests involved in a custody dispute, that of the child was controlling. Hence, the natural right of a parent to the custody of her child is not absolute or automatic and will be subordinated to the welfare of the child when the parent is unsuitable, unfit or incompetent to take care of the child. Likewise, the court, citing earlier Indiana decisions, stated that the welfare of the child may outweigh the legal rights of a parent even though she is a suitable person to have custody, where the real and permanent interests of the child demanded a different disposition. 203 Ind. at 283, 179 N.E. 773.

According to the *Duckworth* court, the law presumes for the benefit of the child that it is in the child's interest to be under the care of its natural parent. However, when the court is asked to intervene and withdraw an infant from other persons and put the child in the custody of its natural parent, the court will look into all the circumstances and ascertain whether such an action will be in the real, permanent interest of the child. *Id.* at 283, n. 3, 179 N.E. 773.

---

1. Betty also raises two other issues in her brief: whether the guardianship of a minor child's estate should be placed with the natural mother when she is the only surviving parent of the child, and whether a court-ordered custody study conducted by the Indiana Department of Welfare is admissible. Betty concedes the first issue and does not argue, by citing and applying authority, the second. *See,* Ind. Rules of Procedure, Appellate Rule 8.3(A)(7). Accordingly, we will not address these matters further.

The only evidence adduced in *Duckworth* that the father was not a proper person to have custody of the child was the fact that the father had been declared to be an unfit parent by a justice of the peace, the father having failed to support the family at an earlier point in time. Hence, the trial court had before it the question of the father's reformation and "the paramount question of the welfare of the child." *Id.* at 283, 179 N.E. 773. Acknowledging that the case was a close one upon the evidence and that the evidence showed the child would have had a good home with either of the parties, the court on appeal deferred to the trial court's evaluation of the evidence, noting that the lower court was in the best position to weigh the evidence and appraise the situation.

The supreme court took the same stance ten years later in *Combs v. Gilley, supra* but in that case there was no evidence that the natural mother was an unsuitable custodian. Rather, the evidence showed that the natural parents lived with the paternal grandparents when the child was born. After the parents separated and the custodial parent died, the child continued to reside with the paternal grandparents. The remainder of the evidence tended to show that the mother visited often, maintained her relationship with the child, and could adequately care for the child.

Similarly, in *Gilchrist v. Gilchrist, supra,* the court affirmed a ruling below in favor of the natural mother, indicating that it did not appear from the nature of the evidence, which focused on the superior accommodations and material advantages the child would have if it remained in the home of the stepparent, that the trial court had violated its discretion and reached an untenable position.

Finally, in *Glass v. Bailey, supra,* the court refused to overturn a judgment adverse to the natural mother, repeating that while the natural rights of the parent were entitled to due consideration, the welfare and happiness of the child was the paramount consideration. 233 Ind. at 267, 118 N.E.2d 800. Again the court stated that in these types of cases, hard and fast rules did not prevail and the determination rested in the sound discretion of the trial court which could reach a just and safe conclusion based upon its ability to see and hear the witnesses and weigh the evidence, facilities which an appellate court does not have.

We have discussed these decisions at length for purposes of clarifying that our function on appeal is distinct from that of the trial court. Where as here the trial court has entered a general judgment, we will presume that the trial court correctly applied the law. *Matter of VMS* (1983), Ind.App., 446 N.E.2d 632, 637. Hence, we leave to the trial court the question of whether in this case the paternal grandparents have overcome the presumption in favor of the natural parent. The trial court is clothed with the obligation of evaluating and weighing the evidence. Our role is limited to a review of the evidence in favor of the trial court's determination. If there is any evidence, or legitimate inferences therefrom to support the judgment of the trial court, this court may not intercede or interfere and exercise or use its judgment as a substitute for that of the trial court. *See, Gilchrist, supra* at 372, 373, 75 N.E. 2d 417. On appeal, it is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by the appellant before there will be a basis for reversal. *See, Fox v. Fox* (1984), Ind.App., 466 N.E. 2d 789, 790, *trans. denied; Marshall v. Reeves* (1974), 262 Ind. 107, 311 N.E.2d 807, 811. The question before us then is whether there is any evidence in favor of the trial court's determination that the presumption the interest of the child would best be served by placing him in the custody of the natural mother had been sufficiently rebutted by the evidence.[2]

The evidence offered to rebut the presumption in favor of the natural mother,

---

**2.** We acknowledge that there are a series of appellate court decisions which have recited the test to be used by the trial court in different terms, and in particular have suggested that the trial court's determination is limited to a consideration of essentially three factors: (1) unfitness of the natural parent; (2) long acquiescence in another's custody; or (3) voluntary relinquish-

when viewed in a light most favorable to the judgment, showed that Betty came from a family with a history of alcohol and spousal abuse and herself had been a heavy drinker for a period of about three years after her first marriage ended. Although Betty testified that she had only very infrequently had anything to drink since 1985, she did not receive counseling for the problems which precipitated her drinking. The evidence showed that one of Betty's brothers had difficulty controlling his alcohol consumption and became involved in an altercation with Betty's boyfriend in the presence of Jon. Jon apparently reacted to the fight by hiding under the bed. Jon also reported that on one occasion while he was visiting his mother her boyfriend locked him in a closet. Betty's boyfriend was convicted of reckless driving after an alcohol-related incident in May, 1986.

There was evidence that Betty visited Jon every four to six weeks on the weekends. There is no evidence tending to show whether Betty financially supported Jon. Betty has been unemployed since 1984 when the factory she worked at closed, and has had four different residences in the last six or seven years. Betty and her three other children live with her boyfriend in a house he owns and Betty draws AFDC for two of the other children.

Psychological evaluations of Betty reflected that she tended to be compulsive and when under emotional stress tended toward impulsive judgments. Psychological reports also showed that Betty tended to repress or suppress unpleasant events.

Much of the remaining evidence about Betty presented her in a positive light, showing her capable of being a custodial parent of Jon.

Evidence tending to show that Jon's welfare might best be served by remaining with the grandparents was ample. The psychologist who evaluated Jon and observed him on three different occasions, testified that Jon was an emotionally and intellectually healthy five year old but was deeply affected by his father's death. Jon was emphatic about his desire to stay with his grandparents. When asked to draw a picture of his family, Jon included his deceased father and grandparents but did not draw in his mother or stepsiblings. The psychologist opined that the loss of a parent was great for a child of Jon's age and that putting him in a new environment would compound the crisis for him. The psychologist also reported that while Jon was a quiet child, he was firm and verbal about staying with his grandparents. The psychologist felt that Jon could best be cared for by maintaining the relationships and daily routine which had been established by his father, and expressed the view that the problems facing families of alcoholics were pretty great and that Jon was at much greater risk of becoming an alcohol abuser in such an environment.

We recognize that much of the evidence was favorable to Betty and that this case is a close one. While we might not have attached as much significance to the evidence recited above as the trial court apparently did, and while admittedly the evidence is not overwhelming, this evidence does support the trial court's determination that the presumption in favor of the mother had been adequately rebutted. For these reasons, we affirm.

Judgment affirmed.

CONOVER, P.J., concurs.

RATLIFF, C.J., concurs in result.

---

ment such that the affections of the child and third party have become so interwoven that to sever them would seriously mar and endanger the future happiness of the child. We depart from these decisions only to the extent that they suggest to litigants that the trial court must employ a mechanical approach in evaluating the evidence before it. As we have indicated, the cases which have generated the rule applied in our appellate decisions have not required trial courts to apply these principles so rigidly. *Cf., Marshall v. Reeves, supra* and *Poret v. Martin* (1982), Ind., 434 N.E.2d 885 (Supreme court defers to trial court's application of change in circumstances rule in custody modification actions when there is evidence in record to support the judgment.)