In re The Marriage of Claudette (Whalen) HUNT, Appellant (Respondent Below),

and

Daniel J. Whalen, (Petitioner Below),

v.

Dewey and Sue WHALEN, Appellees (Intervenors Below).

No. 61A03–9005–CV–186.

Court of Appeals of Indiana, Third District.

Jan. 29, 1991.

**1110**

Dawn L. Howell, John Jay Boyce Legal Services Organization of Indiana, Inc., Indianapolis, for appellant.

Stephen L. Trueblood, Trueblood Harmon Carter & Cook, Terre Haute, for appellees.

STATON, Judge.

Claudette Whalen Hunt appeals from the denial of her petition to modify custody of her infant son. She presents three issues for our review:

I. Was the trial court's decision contrary to law?

II. Were the trial court's findings of fact unsupported by the evidence?

III. Was the trial court's order providing for restricted visitation unreasonable?

We affirm.

Claudette and Daniel Whalen were married on February 14, 1988. Their son David was born on June 6, 1988. Shortly thereafter, Daniel joined the United States Army. Claudette did not return to high school, but remained with David full-time. On February 9, 1989, the Whalens were divorced and Claudette was awarded custody of David. Five days later, Claudette married Paul Hunt.

Daniel's parents were granted reasonable visitation with David, and regularly exercised this privilege. On several occasions, the Whalens sought medical care for David. At times, David's maternal grandmother accompanied Mrs. Whalen to the office of Dr. Thomas Nicholas. Dr. Nicholas informed the grandparents that David suffered from iron deficiency anemia, low weight and loose stools. He also expressed concern about David's slow psycho-motor development.

Subsequently, the Whalens petitioned for custody of David. The hearing on their petition was held on August 23, 1989, in Claudette's absence. Custody of David was awarded to the Whalens, and Claudette was given limited visitation privileges. On September 1, 1989, Claudette filed a Motion to Set Aside Default Judgment, which was denied. Claudette then unsuccessfully petitioned to modify custody. The denial of her request for modification precipitated this appeal.

I.

*Applicable Standard of Law*

Claudette asserts that the trial court's decision was contrary to law, in that the court failed to apply the correct legal standard in custody disputes involving a natural parent and a third party. Relying upon *Hendrickson v. Binkley* (1974), 161 Ind.App. 388, 316 N.E.2d 376, *cert. denied,* 423 U.S. 868, 96 S.Ct. 131, 46 L.Ed.2d 98, Claudette argues that the grandparents failed to show that she was an unfit parent, had acquiesced for a long period of time in their custody of David, or had voluntarily relinquished custody of David to them such that David's and the Whalens' affections had become interwoven. She accurately contends that when a parent initiates an action to obtain custody,

a nonparent seeking to retain custody must bear the burden of overcoming the parent's presumptively superior right to custody. *In re Custody of McGuire* (1985), Ind.App., 487 N.E.2d 457, 460.

The grandparents reply that they offered sufficient proof of Claudette's unfitness as a parent to overcome the presumption that a natural parent is best suited to have the custody of his child. However, they urge rejection of a "mechanical approach" to custody disputes involving parents and non-parents. They propose consideration of the evidence under the rationale of *Turpen v. Turpen* (1989), Ind.App., 537 N.E.2d 537. The *Turpen* court departed from prior decisions in parent/non-parent custody disputes which strictly limited consideration to three factors, i.e., unfitness of the natural parent, long acquiescence in another's custody or voluntary relinquishment resulting in interwoven affections. Judge Robertson defined the appropriate inquiry as whether there existed evidence supporting the trial court's determination that the presumption favoring the natural parent had been sufficiently rebutted. *Id.* at 539, 540.

Subsequently, in *Walker v. Chatfield* (1990), Ind.App., 553 N.E.2d 490, this court considered the standard of proof which will support a transfer of custody from a parent to a third party. Custody was not appropriately removed from the custodial (and natural) parent absent a showing of (1) abandonment; (2) unfitness of the natural parent; (3) substantial change in custodial parent's home which was detrimental to the child's welfare; or (4) unreasonableness of the original custody order. *Id.* at 503.

Under any of the standards enunciated in the foregoing cases, including a stringent requirement of "unfitness," the evidence presented herein was sufficient to sustain the trial court's order. Claudette's inability to provide adequate nutrition, a source of income, or a stable environment for David was clearly demonstrated.

In rendering judgment, the trial court concluded: "... clear and convincing evidence has been adduced overcoming the legal presumption in favor of the natural mother, which presumption was also overcome at the hearing on August 17, 1989, and this clear and convincing evidence establishes to the Court that it is in the minor child's best interest that be [sic] and is Ordered to be in the custody of the Whalens." *Record*, p. 63.

Although the trial court did not expressly recite the terminology of *Hendrickson*, we do not find that he ignored the appropriate standard to be applied in parent/non-parent custody disputes. In language closely paralleling that of *Turpen*, he acknowledged the presumption in favor of a natural parent, and specifically found that the presumption had been overcome by clear and convincing evidence.

■ A decision to modify a prior custody order rests within the sound discretion of the trial court. We will not disturb the trial court's decree, absent an abuse of discretion. *Poret v. Martin* (1982), Ind., 434 N.E.2d 885, 887. No such abuse of discretion occurred in the instant proceedings.

II.

*Findings of Fact*

Claudette next contends that the findings of fact were insufficient and unsupported by the evidence. The trial court, at Claudette's request, made the following specific findings of fact and conclusions of law:

1. That the Court has jurisdiction over the person and subject matter herein.

2. That Claudette and Whalens' son Daniel Whalen were divorced in this Court on February 9, 1989. Claudette was given custody of David Whalen and Daniel Whalen was ordered to pay as child support the sum of Two Hundred and Sixty Dollars ($260.00) per month, to be paid directly to Claudette.

3. That at the time of the dissolution, Claudette had begun to see and become involved with Paul Hunt, an individual who was charged with criminal recklessness, aiming and firing a revolver at an automobile being driven by his ex-wife at

the time he and Claudette began seeing each other.

4. That Claudette was living at the Colonial Apartments in Rockville, Indiana at that time.

5. That other witnesses including Claudette's mother took issue with the manner in which she was rearing the minor child.

6. That Claudette testified that there were drugs all around where she was living.

7. That Claudette told a neighbor that she did not have any food for the baby.

8. That during January, February, and March of 1988[sic], Claudette was receiving assistance from the W.I.C. Program in which she received a case of formula fortified with iron for the minor child.

9. That at all times material hereto, said minor child suffered from iron deficiency anemia, loose stools, and was in the lower three percentile (3%) of weight in terms of physical development, acted listless and was not progressing.

10. That in March or April of 1988[sic], Claudette made a decision not to follow the advice of the W.I.C. Program Development Director and registered nurse, Jill Rice and discontinued the formula; instead she decided to see whether two percent (2%) milk coupled with cereal would improve David's weight.

11. That a few weeks thereafter, Claudette changed the minor child's diet to whole milk.

12. That by May 17, 1989, the minor child's anal area and area around his penis was covered with a severe case of diaper rash with blisters.

13. That the Whalens took the minor child to a doctor of their choice, a family practitioner named Dr. Thomas Nicholas in Rockville, Indiana.

14. That Dr. Nicholas obtained the record of the W.I.C. Program, referred the paternal grandparents to a urological specialist in Terre Haute, Indiana, Dr. Douglas Claybrook, of the Associated Physician and Surgeons Clinic and began planning for surgical repair of a hypospadias, a medical condition and symptom which often heralds much more serious internal problems.

15. That Claudette married Paul Hunt on February 14, 1989 as she was pregnant but that child was naturally aborted.

16. That on August 17, 1989, this Court heard the custody petition by the Whalens and granted custody to them.

17. That subsequent thereto, the weight of the child increased dramatically.

18. That subsequent thereto, the child began [sic] bright eyed and alert and his social skills increased.

19. That subsequent thereto, the child's psycho-motor skills improved.

20. That Claudette worked briefly during 1989 at Hardee's restaurant.

21. That Claudette was permitted to visit for several hours two (2) times per week with the minor child at the home of the Whalens.

22. That Claudette frequently only made one such visitation.

23. That at this time neither Claudette nor her husband Paul Hunt are employed nor have any income whatsoever, except they are receiving some food stamps.

24. That the relationship between Claudette and Paul Hunt has been stormy and on at least one occasion during 1989, Claudette called the police from a neighbor's home and called her mother advising her mother to come and get her because her husband had beaten her up.

25. That during the summer Paul Hunt pled guilty to the above mentioned criminal recklessness a Class A misdemeanor and was placed upon probation.

26. That during his period of probation, Paul Hunt has again been arrested for driving under the influence, possession of marijuana, possession of hashish, possession of hashish oil, and resisting arrest.

27. That Paul Hunt has threatened both the paternal and maternal grandparents.

28. That Claudette is now pregnant.

29. That Claudette and her husband are now living in a mobile home owned by his parents and they are paying the couple's living expenses as a "loan."

30. That on the new set of criminal charges, a friend of Paul Hunt's "gave" him Nine Hundred Dollars ($900.00) to make bond.

31. That it is the testimony of independent witnesses that Claudette and Paul Hunt argue frequently.

32. That Claudette in early 1989 threatened suicide.

33. That the Whalens are 49 and 50 years old respectively, are in good health, have moderate means, and have formed a bond with the minor child.

34. That since the child has been placed with the Whalens, he has been to the family practitioner one time per month in resolving the various congenital conditions and health problems he earlier had.

35. That the Whalens are fit and proper persons to have the custody of David.

36. That there are no material facts adduced at this trial tending to prove that the circumstances had changed making it in the child's best interest to live with his mother.

37. That the facts are with the Whalens and against Claudette.

The Court now concludes as a matter of law that:

1. The Order of this Court of August 17, 1989 should be ratified in all respects.

2. That it is in the best interest of the minor child David Whalen that his custody remain with the Whalens.

3. That there has been no material change in the circumstances of the parties.

4. That it is the conclusion of this Court that clear and convincing evidence has been adduced overcoming the legal presumption in favor of the natural mother, which presumption was also overcome at the hearing on August 17, 1989, and this clear and convincing evidence establishes to the Court that it is in the minor child's best interest that be [sic] and is Ordered to be in the custody of the Whalens.

*Record,* pp. 60–63.

Having reviewed the recorded testimony in its entirety, we conclude that the foregoing findings are amply supported by the evidence.

## III.

### *Restricted Visitation*

■ Lastly, Claudette challenges the provision of the trial court's custody order which provides that she may exercise her right of visitation "in the home of the paternal grandparents." *Record,* p. 31. Although Claudette did not directly appeal the August 23, 1989 custody order, the court's order of January 17, 1990, from which she appeals, specifically ratified (in all respects) the prior order.

Indiana Code 31–1–11.5–24(b) provides: "The court may modify an order granting or denying visitation rights whenever modification would serve the best interests of the child, but the court shall not restrict a parent's visitation rights unless it finds that the visitation might endanger the child's physical health or significantly impair his emotional development."

■ In reviewing a trial court's determination concerning visitation by a non-custodial parent, we may reverse only upon a showing of manifest abuse of the trial court's discretion. Without reweighing the evidence or judging the credibility of witnesses, we examine the record to determine whether it discloses evidence or reasonable inferences to be drawn therefrom which rationally support the finding of the trial court. *Carter v. Dec* (1985), Ind.App., 480 N.E.2d 564, 566.

The trial court's order restricting Claudette's visitation is supported by evidence which indicates that her home environment is permeated by substance abuse and violence. The trial court could have reasonably concluded that these circumstances, coupled with a history of inadequate food supplies in the home, presented a threat to

David's physical health or emotional development.

Affirmed.

HOFFMAN, P.J., and BAKER, J., concur.