665 N.E.2d 910 (1996)
In re the PATERNITY OF L.K.T., Minor Child.
Kelly DRIVER, Jr., Appellant-Petitioner,
v.
L.K.T., Minor Child, Tanya Walton Pratt, Guardian Ad Litem for L.K.T., a Minor Child, and Edward C. Matheny and Lyris Y. Matheny, Appellees-Respondents.
No. 49A02-9506-CV-321.
Court of Appeals of Indiana.
March 11, 1996.
Publication Ordered May 16, 1996.
*911 Richard D. Gilroy, Indianapolis, for appellant.
Audrey K. Grossman, Treacy Grossman & Sullivan, Indianapolis, for appellees.

OPINION
FRIEDLANDER, Judge.
Kelly Driver, Jr. appeals from an order awarding custody of L.K.T., the minor child of Driver and Lyris Matheny, to Matheny's former husband.
We affirm.
The facts favorable to the judgment are that Edward Matheny and Lyris Matheny were married on July 30, 1983. During the marriage, the Mathenys had two children, Cedrick and Crystal. On April 16, 1991, Edward filed a petition for legal separation, which later was converted into a dissolution action. During this time and later, Lyris exhibited signs of mental illness, including displays of bizarre behavior. Following an April 29, 1991 preliminary hearing, Edward was awarded temporary custody of Cedrick and Crystal. A short while later, Lyris was visiting in Nashville, Tennessee, and she disappeared with Crystal. Edward obtained counsel to enforce the Indiana custody order and he and the children returned to Indiana. Lyris remained in Tennessee and maintained a relationship with Driver. Lyris returned to Indiana in October, 1991, and informed Edward that she had conceived a child with Driver and that he wanted her to terminate the pregnancy. L.K.T. was born on June 5, 1992. After L.K.T.'s birth, Lyris, L.K.T., Cedric, and Crystal lived with Edward. In January, 1993, the court granted temporary custody of Cedric, Crystal, and L.K.T. to Edward.
On December 28, 1993, Driver filed a petition to intervene for the purpose of filing petitions to establish paternity of L.K.T. and to seek custody or, in the alternative, visitation with L.K.T. Blood tests revealed that Driver was L.K.T.'s biological father and the court ruled accordingly on the petition to establish paternity. On May 31, 1994, the court dissolved the Mathenys' marriage, but took the matter of custody of L.K.T. under advisement. On June 7, 1994, the court ordered that "a Home Study should be undertaken by the Indiana Family and Social Service Administration, through Interstate Compact with the Tennessee Department of Human Services of the homes of Lyris Y. Matheny and Kelly Driver, Jr., for determination as to their adequacy for custody of [L.K.T.]." Record at 152-53.
A custody evaluation was performed by Dr. Richard J. Lawlor, a clinical psychologist, and submitted to the court. Dr. Lawlor concluded that L.K.T. had formed a "close attachment" with Edward, Cedrick, and Crystal, and that the child had "no relationship" with Driver and reacted to Driver "as a complete stranger." Record at 218. On January 24, 1995, after considering all of the evidence, including Dr. Lawlor's report, the court awarded custody of L.K.T. to Edward and ordered Driver to pay child support.[1] Driver appeals the custody award.
A child custody determination falls within the sound discretion of the trial court and will not be disturbed absent a showing of *912 abuse of discretion. Matter of Guardianship of R.B., 619 N.E.2d 952 (Ind.Ct.App.1993). We will reverse only upon a determination that the custody order "is clearly erroneous and contrary to the logic and effect of the evidence." Id. at 955 (quoting Matter of Guardianship of Riley, 597 N.E.2d 995, 997 (Ind.Ct.App.1992)). When a custody determination is to be made between a natural parent and a third party, the court presumes that the parent has a superior right to custody and the nonparent seeking custody bears the burden of overcoming this presumption. In re Adoption of Infant M.D., 612 N.E.2d 1068 (Ind.Ct.App.1993), trans. denied. When making a custody determination in such cases, the child's best interest is of great importance in the court's deliberations, but it is presumed to be in the child's best interests to be placed with the natural parent. Matter of Guardianship of R.B., supra.
Driver contends that the presumption in favor of the natural parent can be overcome only upon a showing of one of three conditions, citing Kissinger v. Shoemaker, 425 N.E.2d 208 (Ind.Ct.App.1981). Those three conditions are: 1) unfitness of the natural parent; 2) long acquiescence in the child living with others; or 3) "voluntary relinquishment [to others of custody of the child] such that the affections of the child and third party have become so interwoven that to sever them would seriously mar and endanger the future happiness of the child." Id. at 210-11. Driver further contends that the evidence does not demonstrate unfitness, long acquiescence, or voluntary relinquishment.
In Turpen v. Turpen, 537 N.E.2d 537 (Ind. Ct.App.1989), this court rejected the "mechanical approach", id. at 540 n. 2, in evaluating evidence in custody actions. The Turpen court recognized that preeminent in the court's consideration is the best interests of the child, and that there might be reasons for preferring a nonparent over a parent which may not fit neatly into one of the three aforementioned categories. This view, i.e., preeminence of the child's best interest over other considerations, was impliedly reaffirmed in Atteberry v. Atteberry, 597 N.E.2d 355 (Ind.Ct.App.1992): "Our law clearly prefers to consider the best interests of the child over the presumption that custody must be in a natural parent." Id. at 357 (quoting Hilton v. Shafford, 459 N.E.2d 744, 745 (Ind.Ct.App. 1984)). Therefore, when considering the placement of custody of a child with a nonparent, as opposed to a parent, our review of the record is not limited only to determining the existence of one of the three conditions set out in Matter of Guardianship of R.B. Instead, we will presume that the trial court correctly applied the law and will consider
whether there is any evidence in favor of the trial court's determination that the presumption the interest of the child would be best served by placing him in the custody of the natural [parent] had been sufficiently rebutted by the evidence.
Turpen, supra, 537 N.E.2d at 539.
The evidence favorable to the judgment reveals Driver was aware that Lyris was pregnant with his child by October, 1991. In August, 1993, more than one year after L.K.T.'s birth, L.K.T.'s guardian ad litem, Marya Jones Lee, filed a report concerning custody of L.K.T. Lee had spoken with Driver and reported that he "expressed some interest in the minor child, but throughout the course of the conversation [Driver] indicated that that interest was based on recent contact he had had with Lyris Matheny who indicated that he could help her get the child back." Record at 211. Lee contacted Driver to inform him that he could file a petition to establish paternity, but Driver did not return her phone calls or respond to further communication concerning the child. Lee recommended that Edward be given custody of L.K.T.
At the time of the custody determination, L.K.T. was approximately two years old and had lived with Edward since birth. In observing L.K.T.'s interaction with Cedrick and Crystal, Dr. Lawlor described L.K.T.'s behavior as "delightful." Record at 217. He noted that L.K.T. "was talkative, spontaneous, giggled a lot, and was at times appropriately petulant with the two older children." Id. L.K.T.'s interaction with Driver and his nineteen-year-old daughter was "significantly different." Id. She stood upright in the room and was immobile. She refused to *913 make eye contact, made no sounds, and initially resisted attempts to engage her in play activities.
Dr. Lawlor noted that both Driver and Edward were gainfully employed and could provide for L.K.T.'s material needs. Both had made arrangements to place L.K.T. in a day care facility during the day. Neither man suffered from psychological difficulties. Edward's motivation for seeking custody of L.K.T. was based upon affection for the child and concern for her welfare. He had cared for her since her birth and regarded her as his daughter. Driver's motivation was more troubling. As Dr. Lawlor stated:
Kelly Driver states that he is seeking custody of [L.K.T.] because he is the biological father but that he would not oppose Lyras [sic] having custody, and only wants custody if the custody would otherwise go to Edward. He believes that Edward could not love her because she is not his biological child, and he would treat her differently from his other children. The only time prior to this evaluation that he had seen L.K.T. was when she was 2 months of age and Lyras [sic] was in Tennessee and brought her over for him to see.
Record at 216. By his own admission, Driver delayed filing a paternity action until it was clear that Lyris and Edward would not reconcile. Driver then delayed filing for custody until the paternity issue was settled. He did not file the custody action until nearly one year had passed after paternity was established. At the time of the commencement of this appeal, Driver had not attempted to maintain regular personal contact with L.K.T. In fact, the record reveals that he and L.K.T. were virtual strangers to one another. In summary, it appears that Driver's interest in custody was motivated more by preventing Edward from having custody than by a desire to establish and maintain a father-daughter relationship with L.K.T.
Edward, on the other hand, had established a strong and close parental relationship with L.K.T. He was the only parental figure she had ever known, as reflected in Edward's testimony:
She's spoiled, to be honest with you. She will hardly go to anyone else but me. I've changed the Pampers, I've taken the days off work, I was there to take care of her fever when she was feverish from teething and from the different childhood diseases she might have had. We're very close and I've always provided for her, I've always been there for her, and supported her. I've been her primary caretaker . . . I'm the only parent that L.K.T. has ever known.
Record at 392-93. Moreover, L.K.T. had developed a close relationship with Cedric and Crystal. Edward testified that the three children interact well with each other and that the children and Edward are a closely-knit family. The guardian ad litem's testimony supported this assertion.
Well, I can tell you that on each of the . . . in 1994, I have seen Mr. Matheny with the children on three separate occasions, and on each of those occasions [L.K.T.] has been very well adjusted to the two children. It's obvious that she loves them and that the other two children love her very deeply. What is most significant is her attachment to Mr. Matheny as her "father". As a matter of fact, I have personally heard her call him both "Daddy" and "Mommy". And in every instance, before warming up to members of my household, she was just glued to her "Dad", who I know as Mr. Matheny. So I don't think that there is any . . . at least from the standpoints of those four visits . . . anything that would indicate that she is anything other than a member of that family. . . that family unit.
Record at 415-16.
The separate testimonies of Edward, the guardian ad litem, and the independent clinical psychologist are consistent in the critical areas. All described Driver as having virtually no relationship with L.K.T. All described L.K.T.'s relationship with Edward and his children as close and strong. Dr. Lawlor and the guardian ad litem strongly recommended that custody be given to Edward. We conclude that the above constitutes adequate evidence to satisfy the Turpen requirement in rebutting the presumption *914 in favor of awarding custody of L.K.T. to the natural parent, in this case Driver.
We have determined that the trial court's determination should be reviewed under the standard enunciated in Turpen. As stated previously, this standard is less mechanical than one that had been employed in some cases before this court. See, e.g., Atteberry, supra; Kissinger, supra. Nevertheless, we conclude that even under the more mechanical approach, the trial court's order must be affirmed.
The third situation justifying custody to a nonparent is when the natural parent voluntarily relinquishes custody to another such that the affections of the child and the third party become so interwoven that severing them would seriously mar and endanger the future happiness of the child. Atteberry, supra. The evidence most favorable to the judgment reveals that Driver did not seek custody of L.K.T. for more than eighteen months and has not sought to establish a relationship with the child even after the custody action was filed and the matter was decided and appealed. The result is that L.K.T. developed strong emotional bonds with Edward, Cedrick, and Crystal. The strength of these relationships stands in stark contrast to the practically non-existent relationship between Driver and L.K.T. This evidence supports a determination that Driver voluntarily relinquished custody to Edward such that Edward and L.K.T. developed strong emotional bonds, the severing of which would traumatize L.K.T. and would certainly mar and endanger her future happiness. See id.
Judgment affirmed.
KIRSCH, J. concurs.
SULLIVAN, J. concurs in result.

ORDER
This Court having heretofore handed down its opinion in this case marked "Memorandum Decision, Not For Publication"; and
Come now the appellees, by counsel, and file herein their Motion to Publish Decision, alleging therein that the decision in this cause restates and clarifies the standard for granting custody of a child to a person other than a biological parent and prays the Court to order the opinion in this cause published, which said Motion is in the following words and figures, to-wit:

(H.I.)
And the Court, having examined said Petition, having reviewed its opinion, and being duly advised, now finds that said Motion should be granted and this Court's opinion in this appeal should now be ordered published.
IT IS THEREFORE ORDERED as follows:
1. The appellees' Motion to Publish Decision is granted and this Court's opinion heretofore handed down marked "Memorandum Decision, Not for Publication" is now ordered published;
2. The Clerk of this Court is directed to send copies of said opinion together with copies of this Order to the West Publishing Company and to all other companies, services and individuals to whom published opinions are normally sent;
3. West Publishing Company is directed to delete any reference "Memorandum Decision, Not for Publication" which may appear on the face of said opinion, prior to publishing the opinion.
NOTES
[1] We note that there is no challenge before us regarding the trial court's determination that Lyris should not be given custody of L.K.T. The record is replete with evidence that Lyris experienced the onset of mental illness in 1989 and that her condition caused her to engage in bizarre behavior. The record indicates that her condition had not improved at the time the instant appeal was filed.