597 N.E.2d 995 (1992)
In the matter of the Guardianship of Samantha L. Riley and Jamie L. Riley, Minors.
Rose E. Peterson, Appellant,
v.
JAMES RILEY, Appellee.
No. 12A05-9110-CV-357.
Court of Appeals of Indiana, Fifth District.
August 20, 1992.
Ted R. Johnson, Robison Robison Bergum & Johnson, Frankfort, for appellant.
Barry T. Emerson, Ives, Ives & Emerson, Delphi, for appellee.
*996 SHARPNACK, Judge.
Rose Peterson appeals the trial court's denial of her petition for appointment as guardian of her two minor grandchildren following the death of the children's mother and the trial court's judgment awarding custody of the children to the father. We affirm.
Peterson raises two issues for review which we consolidate and restate as:
Did the trial court err when it vacated its previous order appointing Peterson as temporary guardian of her two minor grandchildren and denied, without a hearing, Peterson's petition for appointment as guardian over the children?
When Melody and James Riley dissolved their marriage in 1982, the court awarded custody of their two minor children, Samantha, born June 1981, and Jamie, born July 1979, to Melody and granted visitation rights to James. In 1983, Melody married Dale Moss. Melody, Dale and her two children lived together continuously until Melody died unexpectedly on May 26, 1991. On May 31, Rose Peterson, the children's maternal grandmother, petitioned the court for temporary guardianship of the two children. According to Peterson's petition, the two children were emotionally unprepared for any effort by their father, James, to remove them from their home in Clinton County to his home in Hamilton County. In her petition, Peterson asked the court to act immediately to prevent the children from being removed from their home until the children and Peterson could be heard on Peterson's petition for guardianship.
On the same day that she filed her petition for temporary guardianship, the Clinton Circuit Court held an ex parte hearing on the matter. During direct examination, Peterson testified that she was checking on James' exact address and that she had had contact with James' side of the family. According to Peterson, both the children's paternal grandmother and their aunt wanted to see the children continue to reside with their stepfather, Dale, and James to continue to have visitation rights.
Following the hearing, the court granted Peterson's petition and appointed her temporary guardian over the children for a period not to exceed sixty (60) days from May 31. The order gave Peterson the power either to retain custody of Samantha and Jamie or to return them to their stepfather's home in Frankfort. The order also gave Peterson the power to prohibit the children's removal by their father, except for regular visitation per court order.
Also on May 31, the court set a hearing date of June 7, 1991, on Peterson's petition for appointment of guardianship over Samantha and Jamie. On June 6, a motion to correct error was filed on behalf of James, arguing that the order appointing Peterson as temporary guardian for the children was contrary to law and should be vacated.
On June 7, the trial court held a hearing,[1] and on July 5, it vacated its order approving Peterson as temporary guardian over the children and denied Peterson's petition for appointment of herself as guardian over the children. Further, the court ordered that James had the right to custody of his minor children. In its order, the court stated:
"The Court, having heard argument and having taken this matter under advisement now finds that under the provisions of I.C. 29-3-3-6 a surviving parent of minor children does have a right to custody of the minor children, without a proceeding[,] unless the surviving parent's visitation required supervision under the dissolution proceedings or the surviving parent's visitation had been suspended at the time of the death of the custodial parent."
(Record, p. 46.) It is from this order that Peterson appeals.
Peterson argues that the court misinterpreted I.C. § 29-3-3-6 as creating in the *997 surviving non-custodial parent an exclusive right to custody of their children so long as the two proscribed conditions enumerated in the statute do not exist. Peterson contends that the welfare and interests of the children are of paramount consideration here, and thus the trial court erred both when it vacated its order granting her temporary guardianship over her grandchildren and when it denied her petition for guardianship without a hearing.
We begin our analysis by stating that child custody determinations fall within the discretion of the trial courts and we will not disturb their decisions on appeal absent an abuse of discretion. Brown v. Brown (1984), Ind. App., 463 N.E.2d 310, 312. Appellate courts are reluctant to reverse a trial court's determination concerning child custody unless the determination is clearly erroneous and contrary to the logic and effect of the evidence. In re Custody of McGuire (1985), Ind. App., 487 N.E.2d 457. While Indiana courts can award custody of a child to someone other than the parents, such awards usually are made only following a determination that the parents are either unfit or have all but abandoned the child to the care of that third person. Id. at 314.
In In re Custody of McGuire (1985), Ind. App., 487 N.E.2d 457, the second district reversed a trial court's decision awarding custody of a minor to the child's grandparents rather than her mother. The appellate court concluded that the trial court had abused its discretion by not returning the child to her mother and stated:
"We are not here confronted with a custody dispute between two parents. In such a case, each parent has an equal right to custody and there is no presumption favoring either parent. In this sense, parents are on par with one another and the seminal issue is the best interest of the child. On the other hand, in a custody dispute between a parent and a third party, such as we have here, the focus is significantly different because the parties are not on par. Although the child's best interest is still of great importance, it is presumed that it is in the best interest of the child to be placed in the custody of the parent. Consequently, a nonparent who seeks to displace the parent as custodian bears the burden of overcoming the parent's presumptively superior right to custody. This burden has been described to require a showing, by clear and cogent evidence, that the parent is unfit or has acquiesced in or voluntarily relinquished custody to the third party for such a long period of time that `the affections of the child and the third party have become so interwoven that to sever them would seriously mar and endanger the future happiness of the child.' Hendrickson v. Binkley (1974), 161 Ind. App. 388, 316 N.E.2d 376, cert. denied, 423 U.S. 868, 96 S.Ct. 131, 46 L.Ed.2d 98."
McGuire, 487 N.E.2d at 460 (emphasis in original) (citations omitted).
Pursuant to the relevant portions of I.C. § 29-3-3-3:
"Except as otherwise determined in a dissolution of marriage proceeding[,] a custody proceeding, or in some other proceeding authorized by law, including a proceeding under section 6 [IC 29-3-3-6] of this chapter or another proceeding under this article, and unless a minor is married, the parents of the minor jointly (or the survivor if one (1) parent is deceased), if not an incapacitated person, have, without the appointment of a guardian, giving of bond, or order or confirmation of court, the right to custody of the person of the minor... ."
McGuire and I.C. § 29-3-3-3 support James' superior presumptive right to custody of his minor children over third parties, without the appointment of a guardian or order or confirmation of the court, simply because James is a parent. According to I.C. § 29-3-3-3, however, James may be divested of that right by any of several methods, including a proceeding pursuant to I.C. § 29-3-3-6.
I.C. § 29-3-3-6 states in relevant part:
"(a) The surviving parent of a minor does not have the right to custody of the minor without a proceeding authorized by law if the parent was not granted custody of the minor in a dissolution of *998 marriage decree and the conditions specified in this section exist.
(b) If:
(1) The surviving parent, at the time of the custodial parent's death, had required supervision during visiting privileges granted under a dissolution of marriage decree involving the minor; or
(2) The surviving parent's visiting privileges with the minor had been suspended at the time of the death of the custodial parent;
the court on petition by any person, including a temporary custodian named under IC 31-1-11.5-27, or on the court's own motion, may appoint a temporary guardian for the minor for a specified period not to exceed sixty (60) days."
(emphasis added).
The provisions of I.C. § 29-3-3-6 apply when the custodial parent dies and the non-custodial surviving parent has visitation rights that are either supervised or suspended as set out within the statute. Here, the non-custodial surviving parent, James, had visitation rights that were neither supervised nor suspended. Therefore, contrary to what the trial court suggested in its order, I.C. § 29-3-3-6 does not apply to this case.
As stated in McGuire, parents have a presumptive right to custody of their minor children, absent evidence of parental unfitness or abandonment. This same principle is implicit in I.C. §§ 29-3-3-3 and 29-3-3-6. In accordance with a dissolution decree, however, one parent may be divested of that right absent evidence of either unfitness or abandonment. When that happens, and the custodial parent subsequently dies, the conditions under which the dissolution decree was issued have changed. In response, we return to the general premise that parents have a right to custody of their minor children absent evidence of parental unfitness or abandonment.
In our case, Peterson did not contend either in her petition for temporary guardianship or her petition for guardianship that James was an unfit parent or that he had abandoned his children, and there was no evidence suggesting that such was the case. According to Peterson, she did not seek to terminate either James' parental rights or his contact and visitation with his children. Rather, she sought to have custody awarded to the children's stepfather. Peterson argued that, because the children's stepfather had cared for them for the past nine years, it was in their best interest to remain in his custody. According to Peterson, the children would suffer immediate and irreparable emotional injury and mental anguish should their father be allowed to remove them from their stepfather's home to his home. We find Peterson's argument insufficient.
Contrary to what she alleges, Peterson does seek to terminate James' parental right to custody of his minor children. Because Peterson presented nothing to the trial court to suggest that James was an unfit parent, or that he had acquiesced in or voluntarily relinquished custody of his minor children, the trial court had no basis upon which to divest James of his presumptively superior right to custody. The trial court, therefore, did not err by vacating its previous order appointing Peterson as temporary guardian of her two minor grandchildren and by denying, without a hearing, her petition for appointment as guardian over the children.
AFFIRMED.
RUCKER and CONOVER, JJ., concur.
NOTES
[1] At this hearing, the judge heard only arguments from the opposing attorneys. When Peterson's attorney asked the judge whether he wanted to hear testimony, ostensibly on the petition for guardianship, the judge declined, stating, "No, I think we have a statutory question right now which doesn't need any evidence to support it. Either the situation is proper or it isn't." (Record, p. 74.)