**In the Matter of the GUARDIANSHIP OF R.B., Minor.**

**Sharon GILMORE, Appellant–Guardian,**

**v.**

**Lora Brackett TUBBS, Appellee– Natural Mother.**

**No. 48A05–9205–CV–152.**

Court of Appeals of Indiana, Fifth District.

Aug. 31, 1993.

David W. Stone IV, Stone Law Office & Legal Research, Anderson, for appellant-guardian.

Douglas R. Long, Anderson, for appellee-natural mother.

BARTEAU, Judge.

Sharon Gilmore appeals the decision of the trial court terminating her guardianship over R.B. We affirm.

### FACTS

R.B., age six at the time of the hearing in this case, is the daughter of Lora Tubbs. At the time of R.B.'s birth, August 16, 1985, Lora was married and living in South Carolina. Because of marital difficulties, Lora moved back to Indiana with R.B. shortly after the birth. Lora and R.B. moved in with Lora's mother, Sharon, and her step-father. After approximately seven months, Lora moved out of Sharon's home and left R.B. in Sharon's care. On September 11, 1987, when R.B. was two, Sharon was appointed her guardian with Lora's consent. On January 23, 1991, Lora filed a petition to terminate the guardianship and asked for R.B.'s return. The trial court terminated the guardianship and held

that it was in R.B.'s best interests to be returned to Lora's custody and control.

## BURDEN OF PROOF

■ A question is presented on appeal as to which party bore the burden of proof, although the record is devoid of any indication that this issue was disputed at trial. Nevertheless, for the sake of clarification, we will address the matter. In disputes between natural parents and third parties, a presumption exists that it is in the best interests of the child to be placed in the custody of the natural parent. In order to rebut this presumption, the third-party must show: (1) unfitness of the natural parent; (2) long acquiescence; or (3) voluntary relinquishment such that the child and third party have become so interwoven that to sever the living arrangement would seriously mar and endanger the future happiness of the child. *Hendrickson v. Binkley* (1974), 161 Ind.App. 388, 316 N.E.2d 376. If one of the above factors is proven, then the question becomes whether it is in the best interests of the child to be placed in the custody of the third party. *Id.*

Sharon cites *Harris v. Johnson* (1971), 149 Ind.App. 512, 273 N.E.2d 779, for her contention that Lora bore the burden of proof in this case. *Harris* provides: "However, the natural father had the burden of proof and persuasion in this case." This statement is without citation to authority and is contrary to the majority of case law in this area. *See Matter of Guardianship of Riley* (1992), Ind.App., 597 N.E.2d 995; *Hunt v. Whalen* (1991), Ind.App., 565 N.E.2d 1109; *In re Custody of McGuire* (1985), Ind.App., 487 N.E.2d 457; *Styck v. Karnes* (1984), Ind.App., 462 N.E.2d 1327; *Hendrickson*, 161 Ind.App. 388, 316 N.E.2d 376. Thus, we decline to give it precedential value.

■ Sharon also makes an argument that Lora failed to establish adequate grounds for removal of a guardian. However, this was not a case of removing a guardian; rather, it was one for termination of the guardianship. The distinction between the two is that the former deals with the fitness of the guardian and the latter with the necessity for continuation of the guardianship. *See* Ind.Code 29–3–12–4(a) and I.C. 29–3–12–1. The termination of guardianship statute provides that the court may terminate a guardianship if the guardianship is no longer necessary for any reason. I.C. 29–3–12–1(c)(4). Because sufficient evidence was presented to the effect the guardianship was no longer necessary, the requirements of the appropriate statute were satisfied.

## SUFFICIENCY OF THE EVIDENCE

Although presented as six separate issues by appellant, the only real issue raised is whether the evidence was sufficient to support the judgment of the trial court. The trial court entered the following findings of fact:

1. The guardianship was created with Lora's consent on September 11, 1987.

2. [R.B.] has lived with Sharon since [R.B.] was approximately nine days old. During the first seven months Lora lived in the household as well.

3. Lora voluntarily left [R.B.] with Sharon but was a frequent visitor to Sharon's home when she would visit for meals or to do laundry.

4. Lora maintained a good relationship with [R.B.] and took her on walks and for visits regularly.

5. [R.B.] has been well cared for and supported by Sharon.

6. When Lora moved from Sharon's home she had a series of low income jobs and moved her residence frequently.

7. Lora has maintained her relationship with [R.B.] through frequent visits and the bond between them has not been broken.

8. Lora has been at her current job for over one year, earns approximately Eight Dollars ($8.00) per hour and is off on weekends.

9. Lora has lived in her current home for approximately two years.

10. Lora has remarried on August 31, 1990 and has a good relationship with

her husband, Scott. Scott has a good relationship with [R.B.].

11. Dr. Susan Spencer has described Lora as well adjusted mentally and emotionally.

12. It is in [R.B.]'s best interest that she be returned to Lora and that the guardianship be terminated.

It is not apparent from the judgment whether the trial court found that one of the factors enumerated in *Hendrickson* had been proven, but that it was nevertheless in the best interests of R.B. to have the guardianship terminated, or whether the trial court found that Sharon had failed to prove the existence of any of the *Hendrickson* factors. This lack of clarity, however, does not hinder our review because sufficient evidence was presented to sustain the judgment of the trial court under either scenario.

■■■ A child custody determination falls within the sound discretion of the trial court and such a determination will not be disturbed on appeal absent an abuse of discretion. *Matter of Guardianship of Riley*, 597 N.E.2d at 997. "Appellate courts are reluctant to reverse a trial court's determination concerning child custody unless the determination is clearly erroneous and contrary to the logic and effect of the evidence." *Id.* at 997. "While Indiana courts can award custody of a child to someone other than the parents, such awards usually are made only following a determination that the parents are either unfit or have all but abandoned the child to the care of that third person." *Id.* at 997. While conflicting evidence was presented, a review of the record reveals ample support for the decision of the trial court that it was in R.B.'s best interest to be in Lora's custody. In fact, two psychologists (one of whom was appointed by the court) testified that it was in R.B.'s best interests to be reunited with Lora. Further, sufficient evidence was presented to rebut all of the factors enumerated in *Hendrickson*. In order for this court to find the judgment unsupported by the evidence or contrary to law, as requested by Sharon, we would have to substitute our judgment for that of the trial court, an option we are not permitted.

■■■ Lora asks for an award of damages and appellate attorney fees pursuant to Ind. Appellate Rule 15(G) and Ind.Code 34–1–32–1. She contends such sanctions are appropriate because Sharon's appeal was prosecuted in bad faith and was frivolous and groundless. In defining the parameters of awards of appellate attorney fees, Justice Dickson opined:

In general, a discretionary award of damages has been recognized as proper when an appeal is permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay.

However, in exercising its discretionary power to award damages on appeal, an appellate tribunal must use extreme restraint. Notwithstanding the harmful delay occasioned by crowded judicial dockets and limited resources, we cannot fail to recognize that the imposition of punitive sanctions does have significant negative consequences. It may punish, and will deter, the proper exercise of a lawyer's professional responsibility to argue for modification or reversal of existing law. It will have a chilling effect upon the exercise of the right to appeal. It will discourage innovation and inhibit the opportunity for periodic reevaluation of controlling precedent.

\*  \*  \*  \*  \*  \*

.... We therefore hold that punitive sanctions may not be imposed to punish lack of merit unless an appellant's contentions and argument are utterly devoid of all plausibility.

(citation omitted) *Orr v. Turco Mfg. Co., Inc.* (1987), Ind., 512 N.E.2d 151. We agree with Lora that the facts recited in Sharon's brief are so one-sided that they come dangerously close to misrepresentation of the record. We also agree that the unsupported innuendoes and insinuations and the overall hostile and inflammatory tone of the brief certainly detract from the

merits of Sharon's argument.[1] However, we cannot say that Sharon's contentions and arguments are utterly devoid of all plausibility and will therefore not consider an award of damages and appellate attorney fees as requested. In an emotional case of this nature, it may simply be impossible for one side to give credence to the testimony and evidence of the other side. While not condoning such practices, Sharon was nevertheless entitled to a review of the evidence and a determination by this court whether the decision of the trial court was clearly erroneous or contrary to law. In custody cases there are never any clear "winners" or "losers," except perhaps the children involved. With that thought in mind, we express our hope that Sharon and Lora will make an effort to mend their relationship so that R.B. will not be constantly torn between the two of them.

AFFIRMED.

SHARPNACK, C.J., and GARRARD, J., concur.

1. We also note that it would be more beneficial if counsel would refrain from citing authority from other jurisdictions as if it is controlling precedent in this state. While such additional outside authority is often persuasive, it is best used in conjunction with an in-depth discussion of the state of the law in Indiana on the issue.