**Twila TEEGARDEN, Appellant (Petitioner Below)**

v.

**Samantha TEEGARDEN, Appellee (Respondent Below).**

No. 38A04–9406–CV–212.

Court of Appeals of Indiana, Fourth District.

Nov. 23, 1994.

George O. Lopez, Hinkle, Recster & Lopez, Portland, Richard A. Waples, Indiana Civ. Liberties Union, Wayne C. Kreuscher, Marcie R. Horowitz, Mark E. Shere, Barnes & Thornburg, Indianapolis, for appellant.

RATLIFF, Senior Judge.

*STATEMENT OF THE CASE*

In a custody dispute between Twila Teegarden (Mother) and Samantha Teegarden (Stepmother), the trial court awarded Mother custody of her two sons, I. and S. Mother appeals the trial court's imposition of conditions upon that award of custody.

We reverse the imposition of conditions upon Mother's custody of I. and S.

*ISSUE*

Whether the trial court erred in imposing conditions upon Mother's custody of I. and S.

*FACTS*

Mother and Albert Teegarden (Father) divorced in 1990. Father received custody of their two boys, I. and S., while Mother enjoyed regular and unrestricted visitation. Father married Stepmother approximately two years later. On September 2, 1993, Father died in an accident at home. The next

day, Mother, who resides in Ohio, attempted to contact I. and S., but was unable to do so. On September 7, 1993, Mother filed a motion for immediate custody of her children in the original divorce action, which the trial court denied on September 8, 1993, on jurisdictional grounds. The same day, Mother initiated the present case by filing a petition for order of custody which alleged that custody of the children automatically inured to Mother, the surviving parent, upon the death of Father. Mother also filed an agreed entry giving Stepmother physical custody of the boys until the date of the custody hearing. About a month later, Stepmother filed a counter-petition for custody of the boys alleging that Mother failed to regularly exercise her visitation rights, failed to regularly pay court-ordered child support, and that "circumstances and questions of parental fitness dictate that it is in the best interests of [the children] that Stepmother be granted custody...." R. at 42.

Following a hearing, the trial court entered its order of custody on February 3, 1994. The trial court found that pursuant to Indiana statutory law, Mother "had the right to the custody of her children without court proceedings." R. at 210. *See* Ind.Code 29–3-3-3; Ind.Code 29-3-3-6. However, because Stepmother also filed a petition for custody, the trial court entered into an analysis of the custody rights of natural parents versus third parties and concluded that Mother did not voluntarily relinquish custody of her children, she did not acquiesce to Stepmother the custody of her children, and that Stepmother failed to establish that Mother was unfit. Accordingly, the trial court granted Mother custody of the boys, but imposed the following conditions:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that [Mother's] custody of her children is conditioned upon her (1) not co-habitating with women

with whom she is maintaining a homosexual relationship; and (2) not engaging in homosexual activity in the presence of the children.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Petitioner shall arrange for counselling for herself and her children to aid them in making the transition into their new home."

R. at 212.

### DECISION

■ Mother now argues the trial court erred in imposing the above-mentioned conditions.[1] In support of her contention, Mother posits that the trial court failed to distinguish custody disputes between divorcing parents from those between a natural parent and third persons. In the latter case, Mother argues, the trial court does not "have the authority to set ad hoc conditions that expand the established, bright-line test that defines a natural parent's custody rights." Appellant's Brief at 12. Under the circumstances of this case, we agree.

■ A child custody determination falls within the sound discretion of the trial court and such a determination will not be disturbed on appeal absent an abuse of discretion. *Matter of Guardianship of Riley* (1992), Ind.App., 597 N.E.2d 995, 997. Appellate courts are reluctant to reverse a trial court's determination concerning child custody unless the determination is clearly erroneous and contrary to the logic and effect of the evidence. *Id.* While Indiana courts can award custody of a child to someone other than the parents, such awards usually are made only following a determination that the parents are either unfit or have all but abandoned the child to the care of that third person. *Id.* Thus, we must determine whether the trial court's imposition of conditions constitutes an abuse of discretion.[2]

1. Mother also contends that the record fails to reveal a rational basis for the imposition of conditions, and that the trial court's prohibition against Mother engaging in "homosexual activity" is both unconstitutionally vague and over-broad. We decline to address these issues, however, as we do not reach constitutional questions when a case can be properly disposed of on nonconstitutional grounds. *Board of Trustees v.*

*Grannan* (1991), Ind.App., 578 N.E.2d 371, 376, *trans. denied.*

2. We note our supreme court has held the proper standard of review in determinations of child support obligations to be the "clearly erroneous" standard. *McGinley–Ellis v. Ellis* (1994), Ind., 638 N.E.2d 1249. However, we continue to believe that an "abuse of discretion standard" is

The distinction between custody disputes involving divorcing parents and those involving a natural parent and third parties was analyzed in *In Re Custody of McGuire* (1985), Ind.App., 487 N.E.2d 457, wherein we noted:

> "We are not here confronted with a custody dispute between two parents. In such a case, each parent has an equal right to custody and there is no presumption favoring either parent. In this sense, parents are on par with one another and the seminal issue is the best interests of the child. On the other hand, in a custody dispute between a parent and a third party, such as we have here, the focus is significantly different because the parties are not on par. Although the child's best interest is still of great importance, it is *presumed* that it is in the best interest of the child to be placed in the custody of the parent. Consequently, a nonparent who seeks to displace the parent as custodian bears the burden of overcoming the parent's presumptively superior right to custody. This burden has been described to require a showing by clear and cogent evidence, that the parent is unfit or has acquiesced in or voluntarily relinquished custody to the third party for such a long period of time that the affections of the child and third party have become so interwoven that to sever them would seriously mar or endanger the future happiness of the child."

*Id.* at 460 (emphasis in original) (citations omitted). *See also Riley, supra* 597 N.E.2d at 997; *Hendrickson v. Binkley* (1974), 161 Ind.App. 388, 316 N.E.2d 376, *cert. denied* 423 U.S. 868, 96 S.Ct. 131, 46 L.Ed.2d 98 (1975).

Accordingly, the trial court here found specifically that Mother had not acquiesced in or relinquished custody of I. and S. to Stepmother. With respect to Stepmother's attempt to show Mother to be unfit, the trial court found in pertinent part:

"The remaining factor which could bear upon Petitioner's [Mother's] unfitness is her sexual orientation. It has, however, been held that homosexuality standing alone without evidence of any adverse effect upon the welfare of the children does not render the homosexual parent unfit as a matter of law to have custody of the child *D.H. v. J.H.* (1981), Ind.App., 418 N.E.2d 286.[3] The Court in that case looked to the fact that no evidence had been presented of any homosexual activity of the mother in the presence of the children and no evidence of any adverse effect upon the children of her homosexuality. While Dr. Kenneth Joy opined about potential future adverse impacts upon the children, the Court does not believe the evidence, on balance, establishes the existence of a present adverse effect upon the children as required under the holding in [the] *D.H. v. J.H.* case. Consequently, the Court finds that on this additional issue, the [Stepmother] has failed to establish by clear and cogent evidence that Petitioner is unfit to have custody of her children."

R. at 211. Despite these findings, the trial court nevertheless imposed conditions upon Mother's sexual behavior and ordered the family to attend counseling. In so doing, the trial court relied upon *Marshall v. Reeves* (1974), 262 Ind. 107, 311 N.E.2d 807, and *Pennington v. Pennington* (1992), Ind.App., 596 N.E.2d 305, *trans. denied,* for the proposition that "the Court may place conditions in a custody decree if the conditions serve the best interests of the child." R. at 212.

The trial court's reliance, however, is misplaced. In *Marshall,* Mother received custody of Child, while Father enjoyed regular visitation. Mother then moved to Arizona taking Child along, and Father filed a petition to modify the custody order because he was unable to visit with his child, despite the fact that the decree provided for visitation

proper in custody determinations. *Riley, supra; In re Custody of McGuire* (1985), Ind.App., 487 N.E.2d 457; *Brown v. Brown* (1984), Ind.App., 463 N.E.2d 310.

3. *D.H. v. J.H.* involved a custody dispute between divorcing parents wherein the trial court awarded custody to Father. On appeal, Mother argued the trial court improperly awarded custody to Father because Mother was a homosexual. This court responded by declaring that homosexuality does not render a parent *per se* unfit; we then affirmed the trial court's custody award upon other evidence.

every other weekend. Mother pointed out that the decree was silent as to the removal of Child from the State of Indiana and, therefore, she was within her legal rights to do so. Our supreme court held that even when a decree is silent with respect to the removal of a child from the jurisdiction of the trial court, removal may only be made upon prior judicial sanction. The supreme court continued:

> "Consistent with the idea of prior judicial sanction, the court may impose such terms and conditions as it may deem to be adequate and equitable in order to effectuate the provisions thereof."

*Marshall, supra* at 813. Presumably, it is this quotation upon which the trial court in the present case relies. However, we believe our supreme court's holding is limited to those conditions which ensure the non-custodial parent will be able to exercise his or her *visitation* rights.

In *Pennington*, Mother and Father agreed that Mother would have custody of Child and that Father would enjoy reasonable visitation. On appeal, Father objected to the following condition:

> "[Father's] overnight visitation is restricted to the extent that Ashley D. Barrow shall not be present during said visitation, for the reason that the Court specifically finds that said presence would be injurious to the minor child's emotional development."

*Pennington, supra* at 305. Noting that numerous cases have allowed restrictions on both the heterosexual and homosexual practices of the non-custodial parent's *visitation* rights, this court found the trial court did not abuse its discretion because the evidence about Father's homosexuality provided a rational basis supporting the visitation condition. Neither *Marshall* nor *Pennington* apply in this case.

■ Here, the trial court found specifically that Stepmother failed to prove Mother's ho-

mosexuality rendered her an unfit mother for purposes of custody. Furthermore, as was held in *D.H. v. J.H., supra*, 418 N.E.2d at 293, and as noted by the trial court in its findings of fact, homosexuality standing alone without evidence of any adverse effect upon the welfare of the child does not render the homosexual parent unfit as a matter of law to have custody of the child.[4] Accordingly, the trial court found specifically that Mother's homosexuality did not have an adverse effect on I. and S. Furthermore, the trial court found that "neither boy currently appears to be particularly traumatized by their mother's sexual orientation," R. at 209, despite the fact they had seen Mother kissing and hugging her partner.

Had the evidence revealed that Mother flagrantly engaged in untoward sexual behavior in the boys' presence, the trial court may have been justified in finding her to be unfit and, accordingly, awarded custody to Stepmother. However, without evidence of behavior having an adverse effect upon the children, we find the trial court had no basis upon which to condition Mother's custody of her sons. We therefore find the trial court abused its discretion, and reverse that portion of the custody order which imposes conditions upon the award of custody to Mother.

Reversed.

BAKER, J., concurs.

CHEZEM, J., concurs in result.

---

4. We note other states have adopted a similar view of homosexuality as it relates to parental fitness. For example, *see Bottoms v. Bottoms* (1994), Va.App., 444 S.E.2d 276 (Mother's homosexuality does not render her *per se* unfit and is not sufficient to rebut presumption of parental fitness in custody dispute between mother and grandmother absent evidence of harm to child); *Conkel v. Conkel* (1987), 31 Ohio App.3d 169, 509 N.E.2d 983 (Father's homosexuality does not *per se* result in determination of unfitness so as to preclude visitation rights absent evidence that visitation would be harmful to children).