Ella R. SILLS, Appellant–Petitioner,

v.

Jonathon B. IRELAN, Appellee–Respondent.

No. 05A02–9508–JV–463.

Court of Appeals of Indiana.

April 19, 1996.

Robert G. Forbes, Forcum and Forbes, Hartford City, for Appellant.

## OPINION

ROBERTSON, Judge.

Ella R. Sills [Mother] appeals the order entered in this custody modification (paternity) case which prohibits her from having any contact with her former boyfriend. The sole issue raised on appeal may be restated as:

whether the trial court's order that Mother have no contact with her former boyfriend who had severely beaten the child is violative of Mother's freedom of association protected by the First Amendment of the United States Constitution.

We affirm.

## FACTS

The facts in the light most favorable to the trial court's judgment reveal that the child was born in 1991. Paternity was established in Jonathon B. Irelan [Father] and custody was awarded to Mother. Father is in the military service and stationed in Korea.

On April 27, 1994, the child was taken to the emergency room after having suffered a head injury from allegedly falling down the stairs. On April 30, 1994, the child was again taken to the emergency room after having sustained another head injury which had rendered her unconscious. The child was transferred to Riley Children's Hospital because her injuries were very serious. The child's body was covered with knots and bruises, and it was determined that she had probably been beaten.

The case was referred to Welfare Department as well as the Sheriff's Department for investigation. Mother's boyfriend, Clay Smith, was the target of the criminal investigation because he had been babysitting the child at the time she had sustained the injuries. No criminal charges have yet been filed.

Father filed the instant petition seeking a modification of custody. Mother filed a cross-petition and litigation ensued. At the trial held in this matter, Mother testified that she was not certain that Smith had beaten the child. Nevertheless, she testified as follows:

Q. You have no further contact with [Smith]?

A. No, I don't.

\* \* \* \* \* \*

Q. You are stating under oath that you totally terminated your relationship with [Smith]?

A. Yes, I am.

\* \* \* \* \* \*

Q. Were you concerned [that Smith] may have abused [the child]?

A. I was very concerned.

\* \* \* \* \* \*

A. I told [Smith] that I would only date him. I didn't want him to be around [the child] at all unless I was right there.

Q. You, you would never want to place [the child] in a position of danger, would you?

A. No.

Q. And that's, that's the reason that you've decided not to have anything to do with [Smith] at all, right?

A. Yes, very much so.

The trial court ruled that Mother would retain custody, at least pending the investigation of various other allegations. However, the trial court ordered that Mother have no contact with Smith. In explaining his decision, the trial judge stated on the record:

Also, [Mother], under no circumstances are you to be in the presence of Clay Smith. It's a little disconcerting to me that you sit here and know that Mr. Smith is a target

of investigation and you say, "Well, I kept him away from her," or "I wasn't ... or if she was present, that I was always there at the same time." It's beyond me that you are going to see anybody that may have caused harm to your child. I would suggest that you think that through very carefully and I'm placing an order on you right now that you are not to have any contact with him whatsoever and if you do, I'll remove the child at that time. He was under investigation. He was a prime suspect and whether charges are filed, the Prosecuting Attorney has to make those decisions and they're not going to file unless they can prove it beyond a reasonable doubt and a lot of times when you get a child that's two and a half years old as this child was when it happened, it's very difficult to obtain sufficient testimony that's going to convict somebody and so, just because the prosecution may not go forward, it doesn't mean that the incident didn't happen and if you have some questions like you indicated here there is absolutely no reason why you should have ever had any contact with that person again. In fact, he should have been your arch enemy at that time if you had any suspicion at all that he did anything to your child and the Court's very much concerned about you continuing any relationship with him even after this incident occurred so I'm going to make those the orders of the Court at this time.

## DECISION

■ At the outset we note that Father has failed to file an appellee's brief. When an appellee fails to submit a brief, an appellant may prevail by making a prima facie case of error. *Rzeszutek v. Beck,* 649 N.E.2d 673, 676 (Ind.Ct.App.1995), *trans. denied.* The prima facie error rule protects this court and relieves it from the burden of controverting arguments advanced for reversal, a duty which properly remains with counsel for the appellee. *Id.* However, we may in our discretion decide the case on the merits. *Walling v. Appel Service Co., Inc.,* 641 N.E.2d 647, 649 (Ind.Ct.App.1994). Because this appeal involves questions of first impression in Indiana, we will address Mother's claims on the merits. *See id.*

■ In crafting a custody order, whether in dissolution or paternity proceedings, the paramount concern is the best interest of the child. *Matter of Paternity of Joe,* 486 N.E.2d 1052, 1055 (Ind.Ct.App.1985). Paternity custody orders are committed to the sound discretion of the trial court and will be reversed only upon a showing of an abuse of that discretion. *Id.* An abuse of discretion exists where the trial court's decision is clearly against the logic and effect of the facts and circumstances before the trial court or the reasonable, probable and actual deductions to be drawn therefrom. *Id.* Stated another way, we will not find an abuse of discretion if the judgment is supported by substantial evidence of probative value. *Id.*

■ No Indiana case has directly examined the issue involved here. The freedom of association is a constitutional right which is included in the bundle of First Amendment rights made applicable to the States by the due process clause of the Fourteenth Amendment. *Tashjian v. Republican Party of Connecticut,* 479 U.S. 208, 214, 107 S.Ct. 544, 548–49, 93 L.Ed.2d 514 (1986). A parent's interest in companionship, care, custody, and management of his or her children is a basic civil right protected by the Fourteenth Amendment. *Stanley v. Illinois,* 405 U.S. 645, 651, 92 S.Ct. 1208, 1212–13, 31 L.Ed.2d 551 (1972); *Matter of A.M.,* 596 N.E.2d 236, 238 (Ind.Ct.App.1992), *trans. denied; Schwantes v. Schwantes,* 121 Wis.2d 607, 360 N.W.2d 69, 77 (1984). The government may not require an individual to choose between two constitutional rights. *Aptheker v. Secretary of State,* 378 U.S. 500, 507, 84 S.Ct. 1659, 1664, 12 L.Ed.2d 992 (1964); *Schwantes,* 360 N.W.2d at 77.

■ The freedom of association is not absolute, however, and must yield to sufficiently important governmental interests if the means are closely drawn to avoid unnecessary abridgment of associational freedoms. *Buckley v. Valeo,* 424 U.S. 1, 26, 96 S.Ct. 612, 638, 46 L.Ed.2d 659 (1976). The governmental interest in any child custody case is of great importance; and, as a parent's associa-

tions are relevant to her ability to care for a child, the trial court's consideration of a parent's associations in a custody determination does not violate her freedom of association. *In re Marriage of Diehl*, 221 Ill.App.3d 410, 164 Ill.Dec. 73, 582 N.E.2d 281, 293 (1991), *appeal denied* 144 Ill.2d 632, 169 Ill.Dec. 140, 591 N.E.2d 20.

Some of our sister states have examined the ability of the courts to fashion custody orders which impact upon a parent's associational freedoms. In *Schwantes*, 360 N.W.2d 69, the trial court awarded custody of a child to the mother on the condition that she terminate her relationship with her boyfriend. In holding that the condition was a nullity, the *Schwantes* court stated:

> While some infringements of associational freedoms have been upheld where reasonably related to a legitimate state interest, we can conceive of no valid interest which would be served by requiring a parent to terminate a personal relationship, as a condition of custody, without some showing that the relationship has an adverse affect on the children....
>
> *Because the record does not demonstrate an adverse affect on the children arising out of [Mother's] continuing relationship with [her boyfriend], the trial court had no authority to condition the custody award on her termination of that relationship.*

*Id.* at 77–78 (Emphasis ours). Similarly, the court in *In re Marriage of Wellman*, 104 Cal.App.3d 992, 164 Cal.Rptr. 148, 152–53 (1980), held that award of custody on the condition that custodial parent have no overnight visitation with a member of the opposite sex in the presence of children, unless married to that person, was unduly restrictive of privacy and the associational interests in the absence of compelling evidence that such conduct has significant bearing on the welfare of the children.

The scope of the trial court's authority to place a restriction on a parent's custody in a paternity case would also appear to be an issue of first impression in Indiana. Moreover, there would appear to be no statute directly applicable. However, paternity and dissolution child custody and visitation statutes are in pari materia and are appropriately construed together. *Matter of Paternity of Joe*, 486 N.E.2d at 1055 n. 1. Thus, it is fitting that we consult Indiana dissolution cases and statutes pertaining to custody/visitation matters to ascertain the appropriate standard to be employed here.

In *Teegarden v. Teegarden*, 642 N.E.2d 1007 (Ind.Ct.App.1994), we examined the following condition placed upon a mother's custody:

> [Mother's] custody of her children is conditioned upon her (1) not co-habitating with women with whom she is maintaining a homosexual relationship; and (2) not engaging in homosexual activity in the presence of the children.

*Id.* at 1008. We held:

> Had the evidence revealed that Mother flagrantly engaged in untoward sexual behavior in the boys' presence, the trial court may have been justified in finding her to be unfit and, accordingly, awarded custody to Stepmother. *However, without evidence of behavior having an adverse effect upon the children, we find the trial court had no basis upon which to condition Mother's custody of her sons.* We therefore find the trial court abused its discretion, and reverse that portion of the custody order which imposes conditions upon the award of custody to Mother.

*Id.* at 1010 (Emphasis ours). Indiana Code 31–1–11.5–24 provides that a divorce court may not place a restriction on a parent's visitation rights unless:

> it finds that the visitation might endanger the child's physical health or significantly impair his emotional development.

*See Pennington v. Pennington*, 596 N.E.2d 305, 307 (Ind.Ct.App.1992) (the trial court abused no discretion in ordering that father's visitation take place in the absence of father's companion based upon the finding that the companion's presence would be injurious to the child's emotional development), *trans. denied; Stewart v. Stewart*, 521 N.E.2d 956, 960 (Ind.Ct.App.1988) (A parent's visitation may be restricted only upon a finding that visitation would endanger or impair the child's physical or mental health), *trans. denied.*

■ The State has an important interest in placing restrictions upon custody orders entered in paternity cases which serve to protect children from situations which would endanger their physical health or significantly impair their emotional development. Compelling evidence was presented in the present case that Mother's association with Clay Smith presented a clear and present danger to the child's well-being. Under these circumstances, Mother's freedom to associate with Smith must yield to the best interests of her child. Therefore, the trial court abused no discretion in prohibiting Mother from having any contact with Smith as a condition of continued custody of the child.[1]

Judgment affirmed.

BAKER, J., and SHARPNACK, C.J., concur.

---

1. Obviously, Mother retains the freedom to associate with Smith. The language employed by the trial court as set out in the FACTS section indicates that Mother's continued custody of the child is contingent upon her having no further contact with Smith. We have affirmed a custody modification where the mother has chosen to remain in a relationship with a man who pre-sented a threat to the children. *See Schenk v. Schenk,* 564 N.E.2d 973 (Ind.Ct.App.1991). In *Schenk,* we noted that the courts had, in effect, given the mother the choice of whether to live with the children or the children's abuser and that "[Mother] had made her choice." *Id.* at 978. Similarly, in the present case, Mother must choose.